**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN DOE,<br><br>    Plaintiff,<br><br>   v.<br><br>AMERICAN UNIVERSITY,<br><br>    Defendant. | 19 Civ. 03097 (APM)<br><br>_____<br><br>HEARING REQUESTED |

**MEMORANDUM IN SUPPORT OF JOHN DOE'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

December 23, 2019

KAISERDILLON PLLC
Matthew G. Kaiser (D.C. Bar No. 486272)
Scott Bernstein (D.C. Bar No. 1013922)
William E. Zapf (D.C. Bar No. 987213)
1099 14th Street NW, 8th Floor West
Washington, DC 20005
(202) 640-2850
mkaiser@kaiserdillon.com
sbernstein@kaiserdillon.com
wzapf@kaiserdillon.com

*Attorneys for Plaintiff John Doe*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................................i

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ...........................................................................................................................1

LEGAL STANDARDS ...................................................................................................................4

ARGUMENT...................................................................................................................................5

I. AMERICAN UNIVERSITY BREACHED ITS CONTRACT WITH MR. DOE WHEN IT PERMITTED MS. ROE TO FILE A COMPLAINT MORE THAN ONE YEAR AFTER THE DEADLINE SET IN THE STUDENT CONDUCT CODE AND DISCRIMINATION AND SEXUAL HARASSMENT POLICY.....................................5

    A. The AU Student Conduct Codes and Discrimination and Sexual Harassment Policies in Effect at the Relevant Times Are Part of an Enforceable Contract Between and Among AU, John Doe, and Jane Roe. ...............................................6

    B. AU Breached the Contract by Investigating the Complaint Against Mr. Doe Filed After the Deadline Specified in the Code and Policy Had Passed. ......................10

        1. The Title IX Claim Against John Doe Was Time-Barred Under the Terms of the Code and Policy as of One Year Following the Date of the Alleged Incident. ...................................................................................................11

        2. AU Cannot Apply a New Limitations Provision Retroactively to Revive a Time-Barred Title IX Claim. ...................................................................17

II. THE COURT SHOULD IMMEDIATELY ORDER AMERICAN UNIVERSITY TO VACATE ITS FINDING OF RESPONSIBILITY AND RESCIND THE SANCTIONS IMPOSED ON MR. DOE. ..............................................................................................20

CONCLUSION ..............................................................................................................................20

**TABLE OF AUTHORITIES**

Cases

*2301 M St. Coop. Assoc. v. Chromium LLC*, 209 A.3d 82 (D.C. 2019)..........................................5

*Alden v. Georgetown Univ.*, 734 A.2d 1103 (D.C. 1999) .............................................................7

*Algee v. State Farm Gen. Ins. Co.*, 890 S.W.2d 445 (Tenn. 1994) ................................................18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..................................................................4

*Basch v. George Washington Univ.*, 370 A.2d 1364 (D.C. 1977)...................................................6

*Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939 (D.C. Cir. 2017)............................4

*Brown v. Rector & Visitors of Univ. of Va.*, No. 3:07cv00030, 2008 WL 1943956 (W.D. Va. May 2, 2008)...........................................................................................................................9

*Burnett v. New York Central R.R. Co.*, 38 U.S. 424 (1965) ........................................................16

*Char-Mo Investors, Inc. v. Market Ins. Co.*, 58 A.D. 589 (N.Y. 1977) .................................18, 19

*Chenari v. George Washington Univ.*, 847 F.3d 740 (D.C. Cir. 2017)...........................................6

*Coffman v. Provost * Umphrey Law Firm L.L.P.*, 161 F. Supp. 2d 720 (E.D. Tex. 2001)...........19

*Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561 (D. Mass. 2016) ...............................................15, 16

*Doe v. George Washington Univ.*, 305 F. Supp. 3d 126 (D.D.C. 2018) .........................................6

*Doe v. George Washington Univ.*, 321 F. Supp. 3d 118 (D.D.C. 2018) ...................................9, 20

*George Washington University v. Scott*, 711 A.2d 1257 (D.C. 1998)...............................17, 18, 19

*Hartford Fin. Servs. Group v. Hand*, 30 A.3d 180 (D.C. 2011)....................................................5

*Holert v. Univ. of Chicago*, 751 F. Supp. 1294 (N.D. Ill. 1990) .............................................15, 16

*Holland v. Hannan*, 456 A.2d 807 (D.C. 1983) ............................................................................5

*Intercounty Constr. Corp. v. District of Columbia*, 443 A.2d 29 (D.C. 1982)...............................5

*Kerr v. Johns Hopkins Univ.*, No. L-10-3294, 2011 WL 4072437 (D. Md. Sept. 12, 2011) .15, 16

*Kumar v. George Washington Univ.*, 174 F. Supp. 3d 172 (D.D.C. 2016).....................................4

*Martinez v. Hartford Cas. Ins. Co.*, 429 F. Supp. 2d 52 (D.D.C. 2006) ..........................13, 16, 19

*Morris v. Brandeis University*, 804 N.E.2d 961 (Mass. App. Ct. Feb. 27, 2004) ...................15, 16

*Mosby-Nickens v. Howard Univ.*, 864 F. Supp. 2d 93 (D.D.C. 2012) ......................................9, 10

*Nattah v. Bush*, 605 F.3d 1052 (D.C. Cir. 2010) ...........................................................19

*Pride v. Howard Univ.*, 384 A.2d 31 (D.C. 1978)............................................................6

*Richter v. Catholic Univ. of America*, No. 18-00583 (RJL), 2019 WL 481643 (D.D.C. Feb. 7, 2019)........................................................................................................9

*Royer v. USAA Cas. Ins. Co.*, 741 F. Supp. 2d 767 (N.D. Ind. 2011) ...........................................18

*Shelton v. Ritz Carlton Hotel Co.*, 550 F. Supp. 2d 74 (D.D.C. 2008)...........................................19

*Shin v. Univ. Md. Med. Sys. Corp.*, 369 Fed. Appx. 472 (4th Cir. 2010).......................................15

*Tillery v. D.C. Contract Appeals Bd.*, 912 A.2d 1168 (D.C. 2006)...................................................5

*Tower Ins. Co. of New York v. Davis/Gilford*, 967 F. Supp. 2d 72 (D.D.C. 2013). ........................6

*United States ex rel. K & R Ltd. P'ship v. Mass. Housing Fin. Agency*, 456 F. Supp. 2d 46 (D.D.C. 2006) ........................................................................................14

*Vogel v. Tenneco Oil Co.*, 465 F.2d 563 (D.C. Cir. 1972). ...........................................................5

Treatises

Richard A. Lord, 19 Williston on Contracts (4th ed. 2010) ...........................................................19

John Doe's motion for partial summary judgment presents the same issues of law raised in Sections III.A.1 and III.A.2(ii) of Defendant's motion to dismiss. (*See* Def.'s Mem. at III.A.1 and III.A.2(ii).)[1] For both this motion and those sections in Defendant's motion to dismiss, the Court will consider (a) the existence of an enforceable contract between American University ("AU") and Mr. Doe and (b) the alleged breach of that contract by AU through permitting Ms. Roe to file a complaint for sexual misconduct more than one-and-a-half years after the stated deadline stated in AU's Student Conduct Code (the "Code") and Discrimination and Sexual Harassment Policy (the "Policy") in effect at the time. Because these legal issues are the same for both Mr. Doe's motion for partial summary judgment and AU's motion to dismiss, and because their resolution does not require the resolution of disputed issues of material fact, this memorandum both supports Mr. Doe's motion for summary judgment and responds to the above-mentioned sections of AU's motion to dismiss.

## INTRODUCTION

This motion for summary judgment and the relevant issues raised in AU's motion to dismiss present pure legal questions of contract interpretation based on indisputable relevant facts. The questions at the heart of this motion for summary judgment are:

1. Is it a breach of contract for a school to accept a complaint alleging sexual misconduct, and investigate and punish a student based on that complaint, when the complaint is filed more than one-and-a-half years after the deadline set by the school's disciplinary rules in effect at the time of the alleged incident?

---

[1] Unless otherwise stated, all definitions and abbreviations from Mr. Doe's opposition to Defendant's motion to dismiss filed contemporaneously with Mr. Doe's motion for partial summary judgment apply to this memorandum as well.

2. Does a later version of the disciplinary rules adopted after the original deadline for filing the complaint had expired, which contains no specific deadline for filing such a complaint, effectively revive the complaining student's ability to bring the otherwise time-barred complaint?

As a matter of law, the answer to the first question is yes and the answer to the second question is no. Because the relevant terms of the agreements in this case are clear and unambiguous and the material facts relevant to Mr. Doe's claim are undisputed, Mr. Doe is entitled to partial summary judgment on his claim for breach of contract.[2]

In this case, Mr. Doe was disciplined by AU as a result of a complaint filed by fellow AU student, Jane Roe, in January 2019. Ms. Roe filed her complaint with the school more than two-and-a-half years after the date of the alleged incident on which her complaint was based, April 22, 2016. In April 2016, AU's Student Conduct Code (the "Code") and Discrimination and Sexual Harassment Policy (the "Policy") contained an unambiguous requirement that complaints against another student for sexual misconduct must be filed with the school within one year of the alleged violation. A year later, in April 2017, the Code and Policy contained the same requirement; the one-year deadline was not extended before its expiration. The disciplinary proceedings against Mr. Doe were started in January 2019. There is no dispute that Ms. Roe did not comply with the one-year requirement in effect at the time of the alleged incident and one year after the date of the alleged incident.

---

[2] To be clear, Mr. Doe moves for summary judgment for breach of contract only as to the theory that AU's permission of the complaint and subsequent investigation violated the terms of the contract. Mr. Doe maintains his breach-of-contract claim on other grounds asserted in Sections III.B through III.F of his Complaint, *see* ¶¶ 271-89, but does not seek summary judgment of his claim on those grounds at this time.

Under prevailing law in the District of Columbia, AU's Code and Policy are part of a contractual agreement between the school and its students, including Mr. Doe and Ms. Roe. As such, both the university and its students were bound by and entitled to the rights and benefits provided by that contract. Under the terms of the contract, therefore, not only was Ms. Roe required to bring any complaint for sexual misconduct within a year following the incident; Mr. Doe was entitled to a right of repose with respect to potential disciplinary complaints brought against him after the stated deadline. Such a right and benefit provided to students like Mr. Doe, like limitations periods in general, serves an important purpose: to avoid subjecting students to discipline years after an alleged incident, as happened here, when memories have faded and potential exonerating evidence is lost. Given this right, AU was not permitted to discipline Mr. Doe under the terms of the agreement. The fact that they did so was a breach of the contract between Mr. Doe and the university.

Prior to the 2018-19 academic year in July 2019, AU revised the limitations period stated in the Code and Policy to require students to bring such complaints "as soon as possible" following the alleged incident, rather than within one year. Thus, at the time Ms. Roe brought her complaint in January 2019, the Code and Policy contained no hard deadline. That new provision is of no moment, however.

As a matter of law, the revisions to AU's Code and Sexual Harassment Policy cannot be applied retroactively to divest Mr. Doe of his contractual right—in this case, his right to be free from stale allegations against him. This is especially true in a case like this, where the revision to the agreement is made unilaterally by the defendant. Moreover, such a conclusion is further supported by the fact that the plain language of the revised Code and Policy contain no indication that AU intended the new rule to be applied retroactively.

Because AU proceeded to discipline Mr. Doe despite the fact that Ms. Roe's complaint was time-barred under the terms of the agreement, AU breached its contract with Mr. Doe and Mr. Doe is entitled to a partial summary judgment on Count III of the Complaint. In view of this breach, AU should be required to vacate its finding of responsibility against Mr. Doe and rescind the sanctions imposed on him based on that finding.

### LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering such a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 952 (D.C. Cir. 2017). "[T]he mere existence of *some* alleged factual dispute between the parties," however, "will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A breach of contract requires "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach." *Kumar v. George Washington Univ.*, 174 F. Supp. 3d 172, 184 (D.D.C. 2016) (internal quotation marks omitted).

**ARGUMENT**

## I. AMERICAN UNIVERSITY BREACHED ITS CONTRACT WITH MR. DOE WHEN IT PERMITTED MS. ROE TO FILE A COMPLAINT MORE THAN ONE YEAR AFTER THE DEADLINE SET IN THE STUDENT CONDUCT CODE AND DISCRIMINATION AND SEXUAL HARASSMENT POLICY.

The District of Columbia[3] "adhere[s] to an objective law of contracts, meaning that the written language embodying the terms of an agreement will govern the rights and liabilities of the parties regardless of the intent of the parties at the time they entered into the contract, unless the written language it is not susceptible of a clear and definite meaning." *Hartford Fin. Servs. Group v. Hand*, 30 A.3d 180, 187 n.12 (D.C. 2011) (internal quotation marks omitted). This includes "follow[ing] the parol evidence rule, which excludes extrinsic evidence to assist in contract interpretation and limits [the court's] analysis to the plain meaning of the contractual terms if they are otherwise unambiguous." *2301 M St. Coop. Assoc. v. Chromium LLC*, 209 A.3d 82, 87 (D.C. 2019). Accordingly, "the plain and unambiguous meaning of a written agreement is controlling, in the absence of some clear evidence indicating a contrary intention." *Vogel v. Tenneco Oil Co.*, 465 F.2d 563, 565 (D.C. Cir. 1972).

Whether a contract is ambiguous, is a question of law. *Tillery v. D.C. Contract Appeals Bd.*, 912 A.2d 1169, 1176 (D.C. 2006). "Contracts are not rendered ambiguous by the mere fact that the parties do not agree upon their proper construction."[4] *Holland v. Hannan*, 456 A.2d 807, 815 (D.C. 1983). Moreover, "[t]he proper interpretation of an unambiguous contract provision is

---

[3] The laws of the District of Columbia apply to Mr. Doe's contract claim, as AU is located with the District and the issues presented involve the application of certain policies to students enrolled at AU's campus in the District.

[4] Moreover, any "ambiguities remaining in the contract will be construed strongly against the drafter," *Intercounty Constr. Corp. v. District of Columbia*, 443 A.2d 29, 32 (D.C. 1982) (internal quotation marks omitted), which in this case is AU.

a question of law, and thus is well-suited to disposition by summary judgment." *Tower Ins. Co. of New York v. Davis/Gilford*, 967 F. Supp. 2d 72, 78 (D.D.C. 2013).

> **A.** **The AU Student Conduct Codes and Discrimination and Sexual Harassment Policies in Effect at the Relevant Times Are Part of an Enforceable Contract Between and Among AU, John Doe, and Jane Roe.**

AU begins its motion to dismiss Mr. Doe's contract claim by arguing that it was not bound to follow its own disciplinary procedures published in the Codes and Policies in investigating and punishing Mr. Doe.[5] Remarkably, AU does not merely contend that certain provisions of the Code or the Policy do not create contractual duties; instead, AU appears to contend that it has absolutely no contractual obligations to its students under the Code or the Policy. (*See* Def.'s Mem. at 21-24.) As a matter of law, this is simply not true.

Both the D.C. Court of Appeals and D.C. Circuit "are clear" that the relationship between a student and their school "is contractual in nature and permits suits for its breach." *Doe v. George Washington Univ.*, 305 F. Supp. 3d 126, 131 (D.D.C. 2018) (citing *Chenari v. George Washington Univ.*, 847 F.3d 740, 744 (D.C. Cir. 2017); *Basch v. George Washington Univ.*, 370 A.2d 1364, 1367 (D.C. 1977)). The terms of such contracts can include, among other things, disciplinary codes, *Pride v. Howard Univ.*, 384 A.2d 31, 34 (D.C. 1978), and other

---

[5] All citations to exhibits are to the exhibits to the Declaration of William E. Zapf, which is filed herewith. There are three Codes and two Policies that are materially relevant. here: (1) the Code in effect at the time of the alleged incident during the 2015-16 academic year ("2015-16 Code"), included in Exhibit 1; (2) the Code in effect one year after the date of the alleged incident ("2016-17 Code"), included in Exhibit 2; (3) the Code in effect at the time Ms. Roe filed her complaint ("2018-19 Code"), included in Exhibit 4; (4) the Policy in effect at the time of the alleged incident, which remained in effect one year later, included in Exhibit 5; and (5) the Policy in effect at the time Ms. Roe filed her complaint, included in Exhibit 6. For completeness, also attached is the Code in effect during the 2017-18 academic year, which also contained a one-year deadline. *See* Ex. 3; *see also* Mr. Doe's Statement of Material Facts as to Which There is No Dispute, ¶ 16.

communications distributed to students, *Alden v. Georgetown Univ.*, 734 A.2d 1103, 1110 (D.C. 1999).

AU attempts to argue that Mr. Doe has not sufficiently alleged facts showing that AU intended to be bound by the detailed disciplinary procedures set forth in the Policy and Code.[6] Rather incredibly, AU attempts to portray the Code and Policy essentially as a set of aspirational statements. In an attempt to support this theory, AU has cherry-picked a few statements in the Code and Policy, including introductory statements in the Preamble and Statement of Purpose (*see* Def.'s Mem. at 22-23), but those are the very types of non-binding statements found at the beginning of nearly every contract. In doing so, AU ignores the pages and pages of detailed procedures that it promises its students in disciplinary proceedings.

Even a cursory review of the language used in the Codes and Policies quickly and clearly reveals AU's intent to bind itself. For example, in all three versions of the Code relevant to the Complaint, the University promises that all students accused of conduct violations "are entitled to [certain] procedural protections," followed by a list of rights AU guarantees to students as part of the disciplinary process.[7] *See* Ex. 1 at 2-3 (2015-16 Code); Ex. 2 at 3-4 (2016-17 Code); Ex. 4 at 4 (2018-19 Code). Further, the Codes for the relevant periods specify in detail the procedures and standards AU will follow in Title IX investigations, sanctions, and appeals. *See, e.g.,* Ex. 1 at 10-17 (2015-16 Code); Ex. 2 at 11-19 (2016-17 Code); Ex. 4 at 17-21 (2018-19 Code). Numerous procedures are couched in mandatory terms. *See, e.g.*, Ex. 1 at 13 ("board will consist of one hearing officer and two Conduct Council members"); *id.* at 14 ("allegations . . . must be

---

[6] AU appears to concede the other two elements of an enforceable contract: "agreement to all material terms" and "assum[ption] [of] mutual obligations." (*See* Def.'s Mem. at 22-24 (arguing only lack of intent to be bound).)

[7] The 2015-16 and 2016-17 Codes further provide for twelve specific rights afforded to students involved in Title IX disciplinary proceedings. *See* Ex. 1 at 3-4; Ex. 2 at 4-5.

established by a preponderance of the evidence"); *id.* at 18 (investigator "will notify and seek to meet separately" with complainant, respondent, and witnesses); *id.* (investigator "will prepare an investigation report").

Like the Codes, the Policies contain similar language illustrating AU's intent to be bound: "The following roles and responsibilities and complaint resolution process is established to assist the University in ensuring an educational environment and work place free from sexual harassment, discrimination, and discriminatory harassment." Ex. 5 at 4 (August 31, 2015 Policy); Ex. 6 at 5 (August 31, 2017 Policy). The Policies also contain mandatory language describing AU's commitments in Title IX investigations. *See, e.g.*, Ex. 5 at 8 ("the Complainant and Respondent will have an equal opportunity to identify witnesses and evidence"); *id.* ("The Responsible Official will use a preponderance of the evidence standard"); *id.* ("the Responsible Official will issue simultaneous, written notifications of the outcome of the investigation to the concerned parties").[8] After publishing these detailed procedures and policies, AU cannot possibly argue that it is not bound to follow them.

Despite its argument, AU appears to recognize this intent to be bound, as it undermines its contention just a few pages later when it claims it was, in fact, *bound* by its Policy to investigate Ms. Roe's allegations, despite the fact that she reported them one-and-a-half years after the deadline specified in the Code and Policy. (*See* Def.'s Mem. at 27-28.) Specifically, in attempting to argue that it did not breach the contract by permitting Ms. Roe to pursue her complaint years after the deadline, AU argues that it had an "independent *commitment*" under its Policy "to address concerns as they come to its attention." *Id.* (emphasis added). As it highlights

---

[8] Finally, both the Policy and the Code include explicit statements (and in the case of the Policy, signatures) indicating agreement and approval of the Policy and Codes. *See* last pages of Ex. 1, 2, 3, 4, 5 & 6.

in its own brief, AU stated in the Policy that it "*will* respond promptly and effectively to reports of discrimination and *will* take appropriate action to prevent, to correct, or if necessary, to discipline individuals who violate its policy." *Id.* at 27 (emphasis added) (citing Compl. Ex. 3). *See also id.* at 28 (speaking of "commitments and obligations" under the Policy). Although, as discussed below, such obligations do not override the contractual provisions requiring a complaint to be brought within a year of the alleged incident, AU's argument nonetheless demonstrates its own view that it is bound by the terms of the Code and Policy.

In an attempt to support its argument, AU cites *Richter v. Catholic Univ. of America*, No. 18-00583 (RJL), 2019 WL 481643 (D.D.C. Feb. 7, 2019), and *Mosby-Nickens v. Howard Univ.*, 864 F. Supp. 2d 93 (D.D.C. 2012). In *Richter*, the Court distinguished *Doe v. George Washington Univ.*, 321 F. Supp. 3d 118 (D.D.C. 2018) ("*Doe II*"), finding that Catholic University Law School's Academic Rules appeared to be intended only as a means to "'communicate its expectations regarding academic conduct to its students,' *not* an intentional effort by the university to bind itself to the Rules' provisions."[9] 2019 WL 481643, at *3 (emphasis in original). Here, on the other hand, the Policy and Code do not just set one-way

_____

[9] In a footnote, AU also cites *Richter* and an unreported case from the U.S. District Court for the Western District of Virginia in pointing out that AU reserves the right to modify the Code and Policy at any time. (Def.'s Mem. at 23 n.15 (citing *Richter*, 2019 WL 481643, at *3, and *Brown v. Rector & Visitors of Univ. of Va.*, No. 3:07cv00030, 2008 WL 1943956, at *6 (W.D. Va. May 2, 2008).) As AU concedes, however, if a document is part of a contract, it remains a contract even if one party may unilaterally modify it. (*See* Def.'s Mem. at 23 n.15 (citing *Doe II*, 321 F. Supp. 3d at 123 (D.D.C. 2018) (hereinafter, "*Doe II*")).) Indeed, in *Richter*, the Court specifically distinguished *Doe II* by noting that the disciplinary code in *Doe*, like AU's Code, "set forth 'clear procedures that impose[d] requirements' on GW, to which GW 'expressed a clear intent to be bound.'" 2019 WL 481643, at *3. In *Brown*, the document at issue "explicitly disclaim[ed] that it is not to be construed as a contract between the student and the University." 2008 WL 1943956, at *6.

expectations and requirements of students—they set requirements for the school in carrying out its own disciplinary procedures and standards, as reviewed above.

In *Mosby-Nickens*, the Court granted summary judgment in favor of a university where a student failed to "ple[a]d any facts describing and/or identifying either the terms of, or even the existence of, the contract." 854 F. Supp. 2d at 98. That decision, in short, turned on a pleading failure. Only in her summary judgment opposition did the plaintiff in *Mosby-Nickens* begin to respond, providing only limited parts of the handbook. *See id.* at 99 nn.3 & 4. The Court considered whether "any language in the [provided parts of the handbook]" demonstrated the university's "intent to be bound" and found that it did not. *See id.* at 99.

### B. AU Breached the Contract by Investigating the Complaint Against Mr. Doe Filed After the Deadline Specified in the Code and Policy Had Passed.

AU offers three arguments in its attempt to dismiss Mr. Doe's claim that AU breached its contract by permitting a complaint filed after the deadline set in the Policy and Code in effect at the time of the alleged incident: (1) the provisions of the 2018-19 Policy and Code apply to the timing of Ms. Roe's complaint, not those in effect at the time of the alleged incident; (2) that, even if the 2015-16 Policy and Code in effect at the time of the alleged incident apply, AU was nevertheless obligated to investigate the complaint; and (3) the Court should defer to AU's judgment, despite the contract provisions. All three arguments fail. Moreover, because this claim presents a pure issue of law on undisputed facts, Mr. Doe is entitled to summary judgment with respect to this breach.[10]

---

[10] It should not be disputed that Mr. Doe suffered damages in the form of being found responsible for sexual assault, suspension from the university, and a permanent recording of the finding on his academic transcript.

### 1. The Title IX Claim Against John Doe Was Time-Barred Under the Terms of the Code and Policy as of One Year Following the Date of the Alleged Incident.

Ms. Roe's Title IX complaint regarding the alleged incident was time-barred if the terms of the 2015-16 Code and Policy in effect at that time apply because the one-year deadline had long passed by the time she filed her complaint. As explained in this section, AU's second and third arguments in its motion to dismiss—that even if the Code and Policy in effect at the time of the incident apply, it was nevertheless obligated to investigate the complaint, and that the Court should just defer to AU on the matter—simply ignore the contractual obligation at issue and are incorrect as a matter of law.

AU's 2015-16 Code in effect at the time of the alleged incident states in mandatory language that, by default, "[a] written complaint *must* be filed . . . within 15 days . . . of the occurrence or discovery of the alleged infractions." Ex. 1 at 12 (emphasis added). It goes on to create an exception in cases alleging a violation of the university's Policy, providing that in such cases "*the complainant will have one year from the date of discovery to file a complaint*." *Id.* (emphasis in original). Moreover, "requests for extension . . . of the one-year filing period[] must be made in writing . . . and will be evaluated based on whether a reasonable person might be justified in filing after the deadline because of relevant circumstances." *Id.*

This requirement is reinforced and restated in the Policy in effect at the time of the incident, providing additional notice that a complainant must bring a complaint of sexual assault within one-year following the alleged incident. Specifically, under the section titled "INITIATING A COMPLAINT," the Policy in effect in April 2016 states: "Notify the appropriate Responsible Official as quickly as possible of violations of this policy and within one (1) year of the alleged violation." Ex. 5 at 6. Because the complainant must notify the official

both as quickly as possible *and* within one year, the one-year deadline stated in the Policy is an outer bound and is consistent with requirement of the Code.

Although the Code and Policy in effect at the time of the alleged incident permitted requests for an extension of the one-year deadline, they required that such requests be made in writing. *See* Ex. 1 at 12; Ex. 5 at 6. The Code explains that such written requests "will be evaluated based on whether a reasonable person might be justified in filing after the deadline because of relevant circumstances." Ex. 1 at 12. The Policy states that complaints filed after a year may be considered when requested in writing "and extenuating circumstances exist." Ex. 5 at 6. Ms. Roe never requested an extension of the one-year deadline in writing, either before the deadline expired or even afterward, nor does AU contend that she did.[11] Instead, Ms. Roe simply brought her complaint more than two-and-a-half years after the incident, in January 2019.

Here, the incident allegedly occurred on April 22, 2016. (*See* Def.'s Mem. Ex. 1 at 1.) Ms. Roe filed her complaint more than two-and-a-half years later, on January 9, 2019. *See id.* As reviewed, at the time of the alleged incident, the Code and Policy required that such complaints be brought within one year of the incident, April 22, 2017. Moreover, the Code for the 2016-17 academic year in effect one year after the incident contained the identical one-year deadline.[12] *See* Ex. 2 at 13. In other words, the same one-year deadline applied at the time of the alleged incident and at the time the one-year deadline expired. Accordingly, the time for bringing her complaint to the school had expired long before Roe brought her complaint to the school. If the provision stating the one-year deadline is binding, her complaint should not have been permitted

---

[11] It is difficult to imagine what extenuating circumstances would justify filing a complaint more than two-and-a-half years after the alleged incident.

[12] The Policy in effect at the time of the alleged incident was not revised during the one-year period. It was not revised further until August 31, 2017. *See* Ex. 6 at 10.

or investigated. Mr. Doe should not have been found responsible for sexual assault based on stale evidence, and he should not have been punished.

Contract terms setting deadlines for parties to undertake some action or lose the right to do so are generally enforceable in the District of Columbia. *See Martinez v. Hartford Cas. Ins. Co.*, 429 F. Supp. 2d 52, 56 (D.D.C. 2006) (observing that "[c]ontractual provisions limiting the period within which insurance policy-holders may validly initiate a lawsuit are generally enforceable under District of Columbia law"). Despite the enforceability of such provisions, however, AU argues in its motion to dismiss that, even if the 2015-16 deadline applies to Ms. Roe's complaint, the school was nevertheless obligated to investigate her claim. For example, AU argues that enforcing the deadline would "fl[y] directly in the face of AU's fundamental obligations under Title IX to respond to, and remediate, gender-based discrimination on campus whenever it is reported." (Def.'s Mem. at 27.) Despite this strong language, AU does not appear to contend (or at least does not show) that Title IX precludes enforcement of filing deadlines like the one in the 2015-16 Code and Policy.[13]

AU also argues that the unambiguous deadline "runs directly counter" to other statements in its policies stating that the school will respond promptly and effectively to reports of discrimination and that the policies are intended to be consistent with applicable local and federal laws and guidelines. *See id.* With this argument, AU is essentially asking the Court to construe the contract as if the detailed, unambiguous, and mandatory deadline provisions are not even

---

[13] To support this argument, AU cites to the 2001 Revised Sexual Harassment Guidance from the Office of Civil Rights (Def.'s Mem. at 27 n.17), which identifies an "issue" relating to "whether the school recognized that sexual harassment has occurred and took prompt and effective action calculated to end the harassment, prevent its recurrence, and, as appropriate, remedy its effects." Whatever this statement may represent, it does not preclude enforcement of deadlines in disciplinary codes.

there. After all, if AU is obligated to respond to and investigate reports of discrimination no matter when the complaint is filed, the deadline provision is superfluous. *See United States ex rel. K & R Ltd. P'ship v. Mass. Housing Fin. Agency*, 456 F. Supp. 2d 46, 56 (D.D.C. 2006) ("The Court construes contracts in a manner that gives effect to the words used by the parties, and assumes that the parties intend every part of a contract to mean something, so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory." (internal quotation marks omitted)).

AU continues this rationalization for its breach with a hypothetical. It posits that Mr. Doe's argument would permit an investigation if it was reported 364 days after it occurs, "but [AU] would have to ignore the information (and possible danger to the community) if it did not surface until later." (Def.'s Mem. at 28.) Putting aside the clear legal precedent holding that limitations periods in contract are enforceable, this scenario fails to take into account that the provision in question provides for a potential extension if requested in writing. Perhaps if such a dangerous situation arose, the school would consider an extension request based on extenuating circumstances. In any event, such a request was not made here. Nor would this rationalization justify nullifying the contractual language in this case, where there was clearly no danger to the community or other urgent reason to conduct the investigation (Mr. Doe was finishing his last semester and was scheduled to graduate in the summer), and nothing could excuse Ms. Roe waiting more than two-and-a-half years to bring her complaint. At best, AU has identified a reason why it wishes it had written its policy differently. Such a wish, however, does not change what the policy actually said.

Finally, AU cites a number of cases to support a plea for deference, but none of the cases permit ignoring an enforceable contract provision under D.C. law. First, *Shin v. University of*

*Maryland Medical Systems Corporation*, 369 F. App'x 472 (4th Cir. 2010), did not even involve a contract claim or a school-student relationship; rather, it was a suit by a medical intern (employee) against his employer-health care system (although affiliated with the University of Maryland) and the "deference" related to whether proposed accommodations under the ADA were reasonable.[14] *Id.* at 481-82. Second, in *Kerr v. Johns Hopkins University*, No. L-10-3294, 2011 WL 4072437 (D. Md. Sept. 12, 2011), the plaintiff, unlike here, "acknowledged that the University followed all of the procedural steps mandated by the contract," *id.* at 1, and the Court simply refused to "ask[] a lay jury to substitute its judgment for that of the University" on the ultimate determination, *id.* at 2. Third, in *Morris v. Brandeis University*, 804 N.E.2d 961 (Mass. App. Ct. Feb. 27, 2004), although it is true that the Court cited Massachusetts precedent calling for deference to schools in disciplinary matters, the Court also explained that its role was to "consider whether the university violated any of the student's reasonable expectations created by one or more specific provisions of the contract, and examine the record to ensure that the hearing was conducted with basic fairness," which it then proceeded to do in the decision, *id.* at 1 (internal citations omitted), and which is precisely what Mr. Doe is asking the Court to do here. Fourth, in *Holert v. Univ. of Chicago*, 751 F. Supp. 1294 (N.D. Ill. 1990), the Court, in mentioning deference, was referring the arbitrary and capricious standard explicitly adopted by Illinois courts in evaluating breach-of-contract claims against private universities, *id.* at 1301, a heightened standard not adopted in the District of Columbia for such claims. Fifth, in *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561 (D. Mass. 2016), another case involving Massachusetts law, the Court was simply stating the unremarkable proposition that universities may revise its

---

[14] Moreover, AU omitted the first part of the quotation it provided, noting that the Court would defer to the school "[b]ecause [plaintiff] provided no evidence to bring th[e] fact into dispute." *Id.* at 482.

handbooks, not that a school can ignore contractual obligations in a handbook. *Id.* at 597. Indeed,

AU was unable to cite one case that called for deference to a school in enforcing a contract

provision under D.C. law.[15]

A limitations period in a contract serves important purposes. As the U.S. Supreme Court

has explained in the similar context of statutes of limitation:

> Statutes of limitations are primarily designed to assure fairness to defendants. Such statutes promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.

*Burnett v. New York Central R.R. Co.*, 380 U.S. 424, 428 (1965) (internal quotation marks

omitted); *see also Martinez*, 429 F. Supp. 2d at 60 ("The purpose of contractual limitation

provisions is to prevent the insured from engaging in unreasonable delay in proceeding to

enforce or pursue a claim so that insurers may otherwise be protected." (internal quotation marks

and alterations omitted)).

Just like a defendant, Mr. Doe, as an accused student under AU's disciplinary system,

was entitled to rely upon the stated requirements and procedures of the Code and Policy,

including the limitations period set for bringing a complaint of sexual misconduct. The school

did not follow the required standards and procedures. Indeed, Mr. Doe asserted during the

disciplinary hearings that the delay in Ms. Roe bringing the complaint prejudiced his ability to

---

[15] Moreover, the contract cases cited by AU actually support Mr. Doe's argument that the Code and Policy were part of the contract between the school and him. *See Brandeis Univ.*, 177 F. Supp. 3d at 593 ("It is well-established that the student-college relationship is contractual in nature."); *Kerr*, 2011 WL 4072437, at *4 (recognizing that faculty policies and procedures are incorporated into the contract); *Morris*, 894 N.E.2d, at 1 (examining whether the school violated "specific provisions of the contract"); *Holert*, 751 F. Supp. at 1301 ("terms of the contract are generally set forth in the university's catalogs and manuals").

marshal evidence and defend against the allegations. (*See, e.g.*, Def.'s Mem. Ex. 3 (Statement of Mr. Doe regarding the draft Investigation Report) at 3 ("Unfortunately, the information was gathered approximately three years after the events in question.")). Accordingly, by investigating and then disciplining Mr. Doe pursuant to the complaint filed by Ms. Roe more than two-and-a-half years after the stated deadline for filing such complaints had expired, the school breached its agreement with Mr. Doe.

### 2. *AU Cannot Apply a New Limitations Provision Retroactively to Revive a Time-Barred Title IX Claim.*

Perhaps recognizing that application of the deadline provision in the 2015-16 Code and Policy would preclude punishment of Mr. Doe, AU argues in its motion to dismiss that the 2018-19 provision requiring a complainant to file a formal complaint "as soon as possible" applies to Ms. Roe's complaint, even though it was adopted more than a year after her original deadline *expired*. (*See* Def.'s Mem. at 26-27.) Accordingly, the legal issue before the Court is whether AU, in unilaterally revising the Student Conduct Code for the 2018-19 academic year (more than two years after the alleged incident) to remove the one-year deadline, somehow revived Ms. Roe's time-barred complaint. It did not. When the deadline for Ms. Roe to bring her complaint expired, Mr. Doe obtained a vested right to be free from allegations based on events that took place on April 22, 2016, which could not be revoked through amending the agreement between him and the university.

As a general matter, an amendment to an agreement or a new agreement made after the accrual of a right or claim is not applied retroactively to an event triggering the right or claim that occurred under a prior agreement. For example, in *George Washington University v. Scott*, 711 A.2d 1257 (D.C. 1998), the District of Columbia Court of Appeals considered the applicability of an arbitration clause added to a health plan agreement after a plaintiff's claim for

wrongful death had accrued but before the case was filed. The Court ruled that "the arbitration clause did not apply to claims . . . with respect to treatment provided before the effective date of the [later] contract that included that provision." *Id.* at 1260-61. Similarly here, Mr. Doe's right to be free from the allegations had accrued before AU revised its Code and Policy.

One area where this issue arises is in the context of insurance agreements containing limitations provisions for filing a claim, where a statute later sets a longer period for filing the claim. In such cases, courts will not disturb the vested rights of defendants to be free from claims not brought within a contractual limitations period that had already expired prior to the statute's enactment. *See, e.g., Algee v. State Farm Gen. Ins. Co.*, 890 S.W.2d 445, 448-49 (Tenn. 1994) (after contract's limitations period had expired, an amendment to a statute to provide for additional time to bring a new action could not divest defendant of a vested right of repose); *Char-Mo Investors, Inc. v. Market Ins. Co.*, 58 A.D. 589, 589 (N.Y. 1977) (holding that 12-month limitation on actions in fire insurance policy applied to a suit brought prior to amendment of statute extending limitations period to two years). In fact, in *Royer v. USAA Cas. Ins. Co.*, 741 F. Supp. 2d 767, 774 (N.D. Ind. 2011), the Court held that even a statute enacted prior to the expiration of a contract's limitations period did not operate retroactively to extend the timeline for bringing suit.

Moreover, the plain language of the revised limitations period in the 2018-19 Code includes no indication that AU intended for the new deadline to retroactively apply to past incidents, much less past incidents for which the original one-year deadline had already expired at the time the new Code became effective. As reviewed in *Scott*, "[a]t the very least, before the arbitration clause could have any retroactive effect on rights that have already arisen and before the insureds could be held to have foregone rights previously accrued, the language of the new

provision in the contract should so state." 711 A.2d at 1261. *See also Shelton v. Ritz Carlton Hotel Co.*, 550 F. Supp. 2d 74, 79-80 (D.D.C. 2008) (rejecting the argument that an arbitration clause applied to an alleged incident occurring before the agreement was signed, reasoning that "the employment agreement does not contain any language that could be construed as indicating an intent to apply the agreement retroactively"); *Coffman v. Provost * Umphrey Law Firm L.L.P.*, 161 F. Supp. 2d 720, 726-27 (E.D. Tex. 2001) ("[The] plain grammatical language of the [later] arbitration clause gives no indication that it will apply retroactively . . . . To interpret the arbitration clause to apply retroactively would cause Plaintiff to forego her vested right . . . ."); *Char-Mo Investors*, 58 A.D.2d at 589 (N.Y. 1977) ("Ordinarily, statutes of limitations are given prospective construction unless the contrary is clearly indicated.").

Even if the new Policy and Code had explicitly stated that the limitations period was retroactive and revived expired claims, such a term would be null and void. *See Nattah v. Bush*, 605 F.3d 1052, 1058 (D.C. Cir. 2010) (explaining that "an at-will employer does not possess a unilateral right to retroactively reduce or revoke contractually agreed-upon benefits that have already vested" (citing Richard A. Lord, 19 Williston on Contracts § 54:36 (4th ed. 2010)). Indeed, whatever a party does after a limitations period expires has no bearing at all on the fact that the contractual limitations period has expired. *See, e.g., Martinez*, 429 F. Supp. 2d at 59-60.

In *Martinez*, it was undisputed that a contractual two-year limitations period had expired before plaintiff brought suit. The plaintiff there attempted to argue that the insurer had waived a limitations defense due to certain actions taken by the insurance company after the expiration of the limitations period. The Court rejected the argument, reasoning that actions after the contractual deadline for bringing a claim could not waive a limitations period that had already expired. *Id.* (citing cases). Similarly here, it should not matter what AU did after the expiration of

the limitations period, including if it changed the limitations period in a subsequent version of

the Code. It could not unilaterally erase a vested right.

**II.** **THE COURT SHOULD IMMEDIATELY ORDER AMERICAN UNIVERSITY TO VACATE ITS FINDING OF RESPONSIBILITY AND RESCIND THE SANCTIONS IMPOSED ON MR. DOE.**

As an interim remedy for AU's breach of its duty to preclude complaints filed after the

deadline stated in the Code and Policy, an order requiring immediate specific performance is

appropriate. *See Doe II*, 321 F. Supp. 3d at 128 (agreeing to order the school to reconvene an

appellate panel to redecide his appeal where the university breached its contractual obligations in

conducting the prior appeal). But for its breach, AU would not have investigated the two-and-a-

half-year-old claim and would not have found Mr. Doe responsible, nor would it have sanctioned

him. Accordingly, the Court should order AU to immediately vacate its decision finding Mr. Doe

responsible for sexual assault of Mr. Roe and rescind the sanctions.[16]

**CONCLUSION**

For the foregoing reasons, John Doe respectfully requests that his Motion for Partial

Summary Judgment be granted and that AU's Motion to Dismiss be Denied. Mr. Doe further

requests that the Court enter an order requiring AU to rescind its finding of responsibility against

Mr. Doe for sexual assault and lift the sanctions imposed on him based on that finding.

---

[16] Mr. Doe reserves his right to seek all other remedies for this breach of contract, as stated in the Prayer for Relief in his Complaint.

Respectfully submitted,

*/s/ William E. Zapf*

DATED:  December 23, 2019

Matthew G. Kaiser (D.C. Bar No. 486272)
Scott Bernstein (D.C. Bar No. 1013922)
William E. Zapf (D.C. Bar No. 987213)
KAISERDILLON PLLC
1099 14th Street NW, 8th Floor West
Washington, DC 20005
T: (202) 640-2850
F: (202) 280-1034
mkaiser@kaiserdillon.com
sbernstein@kaiserdillon.com
wzapf@kaiserdillon.com

*Attorneys for Plaintiff John Doe*