Exhibit 1

# *American University Student Conduct Code 2015–2016*





# *Preamble*

The central commitment of American University is to the development of thoughtful, responsible human beings in the context of a challenging yet supportive academic community.

# *American University Statement of Common Purpose*

To achieve its ends, an academic community requires the knowledge, integrity, and decency of its members. In turn, the community helps individuals develop habits and values that will enable them to achieve personal satisfaction and to contribute to a better world. This Student Conduct Code is designed to benefit the American University community and to assist in forming the highest standards of ethics and morals among its members. It fosters the university's commitment to excellence and equity and affirms the shared values that make community life possible. Students with alleged violations of the Student Conduct Code should contact Student Conduct and Conflict Resolution Services to receive further information on conduct procedures.

# I. Authority for Student Discipline

Ultimate authority for all university policy is vested in the Board of Trustees of American University. Non-academic disciplinary authority has been delegated by the president to the vice president of Campus Life to implement student conduct policies and take all necessary and appropriate action to protect the safety and well-being of the campus community.

The Board of Trustees reserves the right to review, and to take any action it deems necessary, in any conduct case. In practice, the resolution of nonacademic conduct cases may involve an array of university administrators and committees of students, staff, and faculty. Students are asked to assume positions of responsibility in the university conduct system in order to contribute their skills and insights to the resolution of conduct cases. The university reserves the right to amend this Student Conduct Code at any time according to established procedures.

# II. Responsibilities and Rights

*Provisions afforded to parties involved in cases subject to Title IX and the Campus Sexual Violence Elimination Act are italicized in applicable sections and stated in summary below, in part B.*

A. Every student has a duty to understand and abide by the rules and regulations of the university. Ignorance of a rule or regulation will not be an acceptable reason to find a student not responsible. Students accused of conduct violations are entitled to the following procedural protections:

1.  to be informed of the allegations against them;

2.  to request an informal resolution of the case;

3.  to be allowed reasonable time to prepare a response;

4.  to hear and respond to evidence upon which an allegation is based;

5.  to present relevant witnesses and ask questions of the witnesses at disciplinary hearings;

6.  to be assured of confidentiality according to the terms of the university policy on Confidentiality of Student Records;

7.  to request that any person conducting a disciplinary conference (hearing officer), or serving as a Conduct Council member or hearing administrator, be disqualified on the grounds of personal bias;

8.  to be provided with an opportunity to review these rights before any disciplinary conference or hearing;

9.  to be considered not responsible for the allegations until found responsible based on what is more likely than not to have occurred (by a preponderance of the evidence);

10. to have reasonable access to the case file prior to and during the disciplinary conference or hearing;

11. to have an advisor as defined in Section XI of this Student Conduct Code; and

12. to appeal the outcome of the case according to Section XVII of this Student Conduct Code.

B.   Title IX of the Education Amendments of 1972, a federal statute, mandates that schools receiving federal funds must ensure that all students, irrespective of sex, have access to an equal educational opportunity. The university's Discrimination and Sexual Harassment Policy provides the complaint resolution process to assist the university in ensuring an educational environment and work place free from sexual harassment, discrimination, and discriminatory harassment. A copy of the university's Discrimination and Sexual Harassment Policy is available at www.american.edu/policies/upload/Discrimination-and-Sexual-Harassment-Policy.pdf.   Prohibited conduct under Title IX, the Discrimination and Sexual Harassment Policy, and the Student Conduct Code includes sexual harassment, dating violence, domestic violence, rape, sexual assault, sexual exploitation, and stalking.  These types of prohibited conduct will not be resolved in mediation. To ensure the prompt, fair, and impartial resolution of these types of prohibited conduct, complainants/complaining witnesses and respondents are afforded the following in disciplinary proceedings:

1.   to be informed at the same time of the allegations, the hearing date, and the hearing outcome;

2.   to be allowed reasonable time to prepare a response;

3.   to hear and respond to evidence upon which an allegation is based;

4.   to present relevant witnesses and ask questions of the witnesses at disciplinary hearings;

5.   to be assured of confidentiality according to the terms of the university policy on Confidentiality of Student Records;

6.   to request that any person conducting a disciplinary conference (hearing officer), or serving as a Conduct Council member or hearing administrator, be disqualified on the grounds of personal bias;

7.   to be provided with an opportunity to review these rights before any disciplinary conference or hearing;

8.   to have the respondent be considered not responsible for the allegations until found responsible based on what is more likely than not to have occurred (by a preponderance of the evidence);

9.   to have reasonable access to the case file prior to and during the disciplinary conference or hearing;

10. to have an advisor as defined in Section XI of this Student Conduct Code;

11. to be notified of the outcome as the complainant/complaining witness in cases of crimes of violence, non-forcible sex offenses, sexual assault, dating violence, domestic violence and stalking; and

3

12. to appeal the outcome of the case according to Section XVII of this Student Conduct Code.

## III. Scope of Authority

The Student Conduct Code ("Code") is the university's policy for nonacademic conduct offenses and applies to all students, recognized student organizations, and provisionally recognized student groups at American University, including students at the Washington College of Law ("WCL"). However, alleged prohibited conduct by WCL students will not be subject to the resolution mechanism described in this policy, except in cases involving conduct prohibited by the university's Discrimination and Sexual Harassment Policy. Such violations will be resolved using the procedures set forth in this Code. All other alleged prohibited conduct by WCL students will be resolved according to the procedures set forth in the Honor Code for the Washington College of Law.

The university retains authority over alleged infractions that occur during a student's matriculation or attendance at the university, including winter, spring, and summer breaks, and periods of leave of absence from the university. Therefore, a hearing may be scheduled after a student has completed a program, withdrawn, or graduated from the university. Generally, the university will take disciplinary action for on-campus infractions of the Code. However, the university may take disciplinary action for off-campus infractions of the Code when a student's behavior threatens or endangers the safety and well-being of the campus community; when a student is the subject of a violation of local, state, or federal law; or when, in the judgment of university officials, a student's alleged misconduct has a negative effect on the university's pursuit of its mission or on the well-being of the greater community.

## IV. Violations of Law and University Regulations

Students may be accountable both to civil authorities and to the university for acts that constitute violations of law and of this Code. Disciplinary action at the university will normally proceed while criminal proceedings are pending and will not be subject to challenge on the grounds that criminal charges involving the same incident have been dismissed or reduced.

## V. Definitions

A. "Aggravated violation"—a violation that resulted or could have resulted in significant damage to persons or property or which otherwise posed a substantial threat to the stability and continuance of normal university or university-sponsored activities.

B. "Coerce"—to force one to act based on fear of harm to self or others. Means of coercion may include, but are not limited to, pressure, threats, emotional intimidation, or the use of physical force. Coercion also includes forcing a person to act by impairing the faculties of that person through the administration of a substance.

C. "Complaining witness"—the person alleged to have been subjected to any of the following: sexual harassment, dating violence, domestic violence, rape, sexual assault, sexual exploitation, stalking.

D. "Consent"—words or conduct indicating a freely given agreement to have sexual intercourse or

4

to participate in sexual activities. Sexual contact will be considered "without consent" if no clear consent, verbal or nonverbal, is given; if inflicted through force, threat of force, or coercion; or if inflicted upon a person who is unconscious or who otherwise reasonably appears to be without the mental or physical capacity to consent.

E. "Dating Violence"—violence or abusive behavior against an intimate partner (romantic, dating, or sexual partner) that seeks to control the partner or has caused harm to the partner (the harm may be physical, verbal, emotional, economic, or sexual in nature). The existence of such a relationship shall be determined based on consideration of the following factors: the length of the relationship, the type of relationship, and the frequency of the interaction between the persons involved in the relationship.

F. "Disciplinary conference"—a forum in which a hearing officer meets with a student to resolve an alleged violation of the Code.

G. "Disciplinary hearing"—a forum in which a panel of the Conduct Council meets with a student to resolve an alleged violation of the Code.

H. "Disorderly"—conduct which a reasonable person, under similar circumstances, should be expected to know would disturb the peace.

I. "Domestic Violence"—violence or abusive behavior against a roommate, family member, or intimate partner that causes physical or psychological injury, pain, or illness.

J. "Group"—an association of persons that has applied for recognition as a student organization, but is not yet formally recognized by the university.

K. "Harassment"—an intimidating, hostile, or coercive act which is intentional or persistent.

L. "Hazing"—an intentional act or method of initiation into a group, club, organization, or team that subjects another person, whether voluntarily or involuntarily, to conduct that may injure, abuse, humiliate, harass, or intimidate that person.

M. "Hearing Administrator"—a staff member who conducts disciplinary hearings as set forth in Section XV of this Code.

N. "Hearing Officer"— a staff member who conducts disciplinary conferences as set forth in Section XIV of this Code.

O. "Institution" and "University"—American University and all of its undergraduate and graduate departments and programs.

P. "Organization"—an association of persons that is formally recognized by the university as a student organization.

Q. "Physical Assault"—Unwanted physical contact or the use of physical force to threaten or cause physical injury, pain, or illness.

5

R.  "Preponderance of the Evidence"—a measure of proof that a reasonable person would accept as "more likely than not" that a fact is true or that an incident occurred.

S.  "Rape"—any act of sexual intercourse or sexual penetration of any orifice of the body with a body part or other object that takes place against a person's will or without consent, or that is accompanied by coercion or the threat of bodily harm. [Also see "consent" and "coerce."]

T.  "Reckless"—conduct which a reasonable person, under similar circumstances, should be expected to know would create a substantial risk of harm to persons or property or which would otherwise be likely to result in interference with normal university or university-sponsored activities.

U.  "Relevant"—related to the charges at hand. Relevant information may be excluded by a hearing officer or administrator during a disciplinary conference or hearing if it is unfairly prejudicial.

V.  "Sexual assault"—any intentional sexual touching with any object(s) or body part(s) that is against a person's will or without consent or that is perpetrated through coercion or threat of bodily harm.

W.  "Sexual exploitation"—taking sexual advantage of another, for one's own advantage or benefit, or to benefit or advantage anyone other than the one being exploited. Examples include, but are not limited to: recording, photographing or transmitting sexual photos, sounds, images or other information; voyeurism; indecent exposure; prostituting or soliciting another person; inducing incapacitation to commit acts of sexual misconduct; knowingly exposing another person to sexually transmitted infection (STI) or human immunodeficiency virus (HIV).

X.  "Sexual harassment"—unwelcome sexual advances, requests for sexual favors, and other oral, written or physical conduct of a sexual nature when: submission to or rejection of such conduct is made either explicitly or implicitly a term or condition of education, employment or participation in other university activities; submission to or rejection of such conduct by an individual is used as the basis for evaluation in making academic or personnel decision affecting that individual; or such conduct has the purpose or effect of unreasonably interfering with an individual's work or academic performance, or creating an intimidating, hostile or offensive environment for working, learning or living on campus [Also see Discrimination and Sexual Harassment Policy.]

Y.  "Stalking"—repeated, unwanted contact with any person, including contact by electronic means or by proxy, or the credible threat of repeated contact with the intent to place a reasonable person in fear for his or her safety or the safety of his or her family or close acquaintances or to inflict substantial emotional distress.

Z.  "University premises"—buildings and grounds owned, leased, operated, controlled, or supervised by the university.

AA. "University-sponsored activity"—any activity on or off university premises that is specifically initiated or supervised by the university.

BB. "Weapon"—firearms, fireworks, explosives, metal knuckles, knives, or any other instrument

6

designed or used to inflict injury to person or property.

## VI. Prohibited Conduct

This Code is not written with the specificity of a criminal statute, nor is it intended to cover every instance of potentially prohibited conduct. American University expects its students, wherever they are, to adhere to high standards of honor and good citizenship and to conduct themselves in a responsible manner that brings credit to themselves and the university. The following misconduct is subject to disciplinary action:

A. attempting to engage in any prohibited conduct;

B. interpersonal violence including, but not limited to, physical assault, dating violence and domestic violence;

C. conduct which threatens or endangers the health or safety of any person;

D. sexual assault;

E. sexual exploitation;

F. sexual harassment;

G. rape;

H. using, possessing, distributing, or manufacturing a weapon, or possessing any object produced as a weapon; or any object that is visually indistinguishable from a weapon [exceptions may be made for use of imitation weapons or athletic equipment when used within policies specified by Athletics & Recreation, Health and Fitness faculty, Student Activities, or Performing Arts, as applicable.]

I. hazing;

J. arson;

K. violation of university policies pertaining to the use and/or possession of alcohol;

L. violation of university policies pertaining to the sale and/or distribution of alcohol;

M. unauthorized possession and/or use of any controlled substance, illegal drug (including marijuana) or drug paraphernalia;

N. manufacture, distribution and/or sale of any controlled substance or illegal drug (including marijuana) or drug paraphernalia;

O. violation of local, state, or federal law;

P. entry, attempt to enter, or remaining without authority or permission in any university office,

residence hall room, university sponsored event, or university premises;

Q.  intentionally initiating or causing to be initiated any false report, warning, or threat of fire, explosion, or other emergency;

R.  harassment;

S.  stalking;

T.  theft of property or services or knowingly possessing stolen property;

U.  in university matters not covered by the Academic Integrity Code: dishonesty; misrepresentation; fraud; forgery; or knowingly using false information, documents, or instruments of identification;

V.  intentionally or recklessly destroying or damaging university property or the property of others;

W.  tampering with, or unauthorized or fraudulent use of campus telephone equipment, telephone credit cards, or access codes;

X.  abuse of university computer equipment, networks, systems, or services;

Y.  intentionally or recklessly interfering with normal university or university-sponsored activities, including, but not limited to, studying, teaching (including class sessions and office hours), research, university administration; or fire, police, or emergency services;

Z.  disorderly conduct or interfering with the rights of others;

AA. illegal gambling or gaming, as defined by local, state or federal law;

BB. willfully failing to comply with the directions of university officials, including public safety officers and residence life staff members, acting in performance of their duties;

CC. unauthorized use of the university's corporate name, logo, or symbols;

DD. unauthorized soliciting or canvassing by any individual, group, or organization;

EE. violations of other published nonacademic university regulations or policies, including, but not limited to, policies related to discrimination and discriminatory harassment, computer use, residence life, hazing, and amplification of sound;

FF. violating the terms of any disciplinary sanction imposed in accordance with this Code.

## VII. Standards of Classroom Behavior

Primary responsibility for managing the classroom environment rests with the faculty. Students who engage in any prohibited or unlawful acts that result in disruption of a class may be directed by the faculty member to leave the class for the remainder of the class period. Longer suspensions from

8

class or dismissal on disciplinary grounds must be preceded by a disciplinary conference or hearing, as set forth in Sections XIV and XV of this Code. Academic dishonesty allegations are processed in accordance with procedures set forth in the Academic Integrity Code. Students will be subject to both the Student Conduct Code and the Academic Integrity Code in cases where there is a combination of alleged violations of academic and nonacademic regulations.

## VIII. Student Groups and Organizations

Groups of students and student organizations are expected to comply with all university policies including this Code and all additional policies pertaining to groups and organizations. Allegations of policy violations by groups or organizations will be investigated and resolved through Student Conduct and Conflict Resolution Services. A group or organization may be held responsible for the actions and behaviors of its members and guests. The decision to hold a group or organization responsible as a whole is ultimately determined by examining the circumstances of a situation and by taking into account factors that include, but are not limited to, the following:

1. actions were committed by one or more officers or authorized representatives acting in the scope of their group or organizational capacities;

2. actions involved, were committed by, or were condoned by (actively or passively) a  number of group or organization members, alumni, or guests;

3. actions occurred at or in connection with an activity or event funded, sponsored, publicized, advertised, or communicated about by the group or organization;

4. actions occurred at or in connection with an activity or event that a reasonable person would associate with the group or organization;

5. actions should have been foreseen by the group or organization or its officers, but reasonable precautions against such actions were not taken;

6. actions were the result of a policy or practice of the group or organization;

7. actions would be attributable to the group or organization under the group's own policies (including local or national risk management guidelines);

8. actions were taken by individuals who, but for their affiliation with the group or organization, would not have been involved in the incident;

9. one or more officers or members of a group or organization fail to report knowledge or information about a violation to, or otherwise fail to cooperate with, appropriate university or emergency officials; and

10. the group or organization, or any member acting on its behalf, fails to satisfactorily complete the terms of any disciplinary sanction or outcome.

A.  Recognized student organizations and student groups with provisional recognition, as well as their members and officers, may be held collectively and/or individually responsible for violations of

9

the Code and/or other university policies.

B.  Sanctions for group or organization misconduct may include revocation or denial of registration or recognition, as well as other appropriate sanctions. Sanctions for misconduct by a group with provisional recognition may include denial of recognition, as well as other appropriate sanctions.

C.  Recognized student organizations, including fraternities and sororities, may appoint panels or boards to mediate disputes and enforce association bylaws. Decisions or recommendations by such panels or boards do not constitute official action by the university.

## IX. Interim Suspension

The dean of students or designee may suspend a student from the university for an interim period pending disciplinary or criminal proceedings or medical evaluation regarding behavior relevant to such proceedings. The interim suspension will be effective immediately, without prior notice, whenever there is evidence that the continued presence of the student at the university poses a substantial and immediate threat to him or herself, to others, or to the stability and continuation of normal university functions. Interim suspension excludes students from university premises and other privileges and activities. A student suspended on an interim basis will be given a prompt opportunity to speak with the dean of students or designee in order to discuss the following issues only:

(a) The reliability of the information concerning the student's conduct, including the matter of identity; and

(b) Whether the conduct and surrounding circumstances reasonably indicate that the continued presence of the student on university premises poses a substantial and immediate threat to him or herself, to others, or to the stability and continuation of normal university functions.

## X. Conduct Council

The Conduct Council will consist of students, faculty, and staff selected by the director of Student Conduct and Conflict Resolution Services and appointed by the dean of students with the approval of the vice president of campus life. Candidates for selection and appointment to the Conduct Council will be nominated by the Student Government, Residence Hall Association, Graduate Leadership Council, Student Bar Association, Faculty Senate, and Staff Council. In addition, students, faculty, and staff may apply to become members of the Conduct Council by contacting Student Conduct and Conflict Resolution Services. The director of Student Conduct and Conflict Resolution Services or designee is responsible for training and providing administrative support to the Council. Specifically, Conduct Council members and Student Conduct and Conflict Resolution Services staff will receive annual training on the issues related to dating violence, domestic violence, sexual assault, and stalking, as well as how to conduct a hearing process that protects the safety of a complaining witness and promotes accountability. Among other duties, members of the Conduct Council will sit on hearing panels designed to resolve allegations referred for a hearing in accordance with Section XV of this Code.

A. The director of Student Conduct and Conflict Resolution Services or designee will select a hearing panel from the Conduct Council comprised of three (3) persons: one (1) student and two (2)

members of the faculty/staff.

B. Both the findings and the sanctions determined by Conduct Council hearing panels are recommendations to the dean of students or designee, who will render a decision.

C. Members of the Conduct Council who are alleged to have committed any violation of this Code, other university policies, or a criminal offense may be temporarily suspended from their positions by the director of Student Conduct and Conflict Resolution Services while allegations against them are pending. Members found responsible for any such violation or offense may be disqualified from any further participation in the university conduct system.

Additional grounds and procedures for removal may be established by the director of Student Conduct and Conflict Resolution Services.

## XI. Advisors

A. At their own discretion, complainants and respondents may be advised by an American University student, faculty, or staff member. The role of the advisor is limited to consultation. While advisors may be present at disciplinary conferences or hearings, they may not address hearing bodies, speak in disciplinary proceedings, or question witnesses. Advisors may not act on behalf of the complainant/complaining witness or respondent, or contact any participant in the conduct process. Because the purpose of this conduct process is to provide a fair review of alleged violations of this Code, rather than a formal legal proceeding, participation of persons acting as legal counsel is not permitted.

B. *In cases of dating violence, domestic violence, rape, sexual assault, sexual exploitation, or stalking, the complainant/complaining witness and respondent may be advised and accompanied by an advisor of their choice during a disciplinary conference or hearing and related meetings. Advisors of choice are not limited to American University students, faculty, or staff. However, the role of an advisor is limited to consultation as described in Section XI(A).*

## XII. Standards of Due Process

Students who may be subject to removal from university housing, suspension, or dismissal will be referred to a disciplinary hearing, as specified in Section XV of this Code. Students who may be subject to lesser sanctions for nonacademic misconduct will be referred to a disciplinary conference, as set forth in Section XIV of this Code. Formal rules of evidence will not be applied, nor will deviations from prescribed procedures necessarily invalidate a decision unless significant prejudice to the parties involved or the university result.

## XIII. Procedures for Case Resolution

A. Mediation is encouraged as an alternative means to resolve some conduct cases. The director of Student Conduct and Conflict Resolution Services will determine if mediation is appropriate. The director, at his or her discretion, may decline to process a complaint until the parties in a nonacademic misconduct case make a reasonable attempt to achieve a mediated settlement. To be binding in a conduct case, any mediated settlement must be approved by the director of Student Conduct and Conflict Resolution Services. If mediation fails, the case will be forwarded for a disciplinary conference.

B. Any American University student, faculty, or staff member may refer a student, a recognized student organization, or a student group with provisional recognition suspected of violating this Code to the director of Student Conduct and Conflict Resolution Services. Those referring cases are normally expected to serve as the complainant and to present relevant evidence in hearings or disciplinary conferences. The complainant may request the assistance of an advisor, as set forth in Section XI of this Code. A written complaint must be filed with the director of Student Conduct and Conflict Resolution Services within 15 days (excluding weekends, official university holidays, winter and spring breaks) of the occurrence or discovery of the alleged infraction(s). *The deadline for filing a case will be extended if there is an alleged violation of the university's Discrimination and Sexual Harassment Policy, Whistleblower Policy, or a Code violation involving sexual harassment, domestic violence, dating violence, rape, sexual assault, sexual exploitation, or stalking. In such cases, the complainant will have one year from the date of discovery to file a complaint as set forth in these policies.* Requests for extensions of the 15 day or one year filing periods must be made in writing to  the director of Student Conduct and Conflict Resolution Services or designee, and will be evaluated based on whether a reasonable person might be justified in filing after the deadline because of relevant circumstances.

C. The director of Student Conduct and Conflict Resolution Services or designee will conduct a preliminary review to determine whether the alleged misconduct, if proved, might result in removal from university housing, suspension or dismissal. Students that may be subject to removal from university housing, suspension, or dismissal, will be entitled to a disciplinary hearing before a Conduct Council panel. Students who are unlikely to be subject to removal from university housing, suspension, or dismissal will be referred to a disciplinary conference with a hearing officer, as set forth in Section XIV of this Code.

D. Students referred for a disciplinary hearing by the director of Student Conduct and Conflict Resolution Services may request to have their cases resolved in a disciplinary conference in accordance with Section XIV of this Code. Such request must be in writing, affirming that the student is aware a hearing is being waived. The full range of sanctions may be imposed, including removal from university housing, suspension, or dismissal from the university. Both the findings and the sanctions determined by the hearing officer are recommendations to the dean of students or designee, who will render a decision.  The director of Student Conduct and Conflict Resolution will have the sole discretion in granting such a request.

E. Hearing panel members, hearing administrators, complainants, and respondents will have the right to question relevant witnesses who make statements at disciplinary hearings.

F. The university may withhold awarding a diploma or degree otherwise earned until the completion of the process as set forth in this Code, including the completion of all sanctions imposed. Withholding of a diploma or degree means not conferring a diploma or degree otherwise earned for a defined period of time or until the completion of assigned sanctions.

## XIV. Procedures for Disciplinary Conferences

Students accused of nonacademic offenses that will likely result in penalties less than removal from university housing, suspension, or dismissal are subject to a disciplinary conference with a hearing officer. The director of Student Conduct and Conflict Resolution Services or designee will serve as the hearing officer and conduct the disciplinary conference. Any party may challenge a hearing

officer on the ground of personal bias. The hearing officer may be disqualified by the director of Student Conduct and Conflict Resolution Services or the dean of students or designee. The hearing officer will make inquiries into evidence as necessary to ensure a just outcome of the case. If the respondent chooses not to appear for a disciplinary conference, the information supporting the allegations will be considered and a decision will be made in the absence of the respondent. Nonetheless, the complainant will be required to file a case that meets the standard of a preponderance of the evidence.

In complex cases, the director of Student Conduct and Conflict Resolution Services, at his or her discretion, may refer the case to a disciplinary conference board. Conference board members will be selected by the director. The board will consist of one hearing officer and two Conduct Council members, including at least one student. Decisions of the disciplinary conference board are determined by majority vote.

The director of Student Conduct and Conflict Resolution Services will review all disciplinary conference decisions to ensure their procedural integrity and consistency with the outcomes of prior disciplinary cases. In cases where the director of Student Conduct and Conflict Resolution Services serves as the hearing officer, the dean of students or designee will conduct the review.

The following procedural protections are provided to respondents in disciplinary conferences:

A.  written notice of the specific allegations at least three (3) business days prior to the scheduled conference with additional time at the director's discretion;

B.  reasonable access to the case file prior to and during the conference;

C.  an opportunity to respond to the evidence; and

D.  a right to be accompanied by an advisor, as provided in Section XI of this Code.

*In cases of sexual harassment, sexual assault, rape, domestic violence, dating violence, sexual exploitation, or stalking, the complainant or complaining witness and respondent will be entitled to the same opportunities including, but not limited to: (i) receiving notice of the conference date at the same time as the respondent; (ii) being present during conference proceedings; (iii) receiving simultaneous written notice of the outcome of the disciplinary conference, of the procedures to appeal the results as described in Section XVII, or any change to the results that occurs prior to the time the results become final, and when such results become final; and (iv) the right to appeal an outcome as described in Section XVII.*

## XV. Procedures for Disciplinary Hearings

Students accused of nonacademic offenses that will likely result in sanctions such as removal from university housing, suspension, or dismissal are subject to a disciplinary hearing convened by a hearing administrator before Conduct Council members.

A.  The director of Student Conduct and Conflict Resolution Services or designee will serve as the hearing administrator and conduct the hearing. He or she may participate in hearing panel deliberations and discussions, but cannot vote. The hearing administrator is responsible for final decisions on all procedural issues and may modify hearing procedures, if necessary, to ensure a

13

fair and expedient administration of the hearing.

B. The director of Student Conduct and Conflict Resolution Services or designee will give respondents notice of the hearing date and the specific allegations against them at least five (5) business days in advance of the hearing. Respondents will be accorded reasonable access to the case file, which will be retained in the office of the director of Student Conduct and Conflict Resolution Services.

C. If the respondent chooses not to appear for a disciplinary hearing, the information supporting the allegations will be considered, and a decision will be made in the absence of the respondent. The complainant will be required to present a case that meets the standard of a preponderance of the evidence.

D. All hearings are closed to the public, unless parties mutually request that a hearing be open to the public. The hearing administrator will ordinarily honor such requests unless there are overriding interests to have the hearing closed (e.g., to protect the identity of a sexual harassment victim). Even in a public hearing, the hearing panel may limit the number of observers based on the physical limitations of the hearing room.

E. The hearing administrator will exercise control over the proceedings to avoid needless consumption of time and to achieve orderly completion of the hearing. Any person, including the respondent, who disrupts a hearing may be excluded by the hearing administrator for cause.

F. The university will make audio recordings of hearings. A transcript of the hearing will be provided, upon written request by the complainant or respondent, who must pay for the cost of the transcript service.

G. Any party may challenge a panel member or the hearing administrator on the grounds of personal bias. Hearing panel members may be disqualified by the hearing administrator. A hearing administrator may be disqualified by a majority vote of the members of the hearing panel. Votes will be by secret ballot.

H. People presenting statements will be asked to affirm that their statements are truthful and may be subject to allegations of violating this Code by intentionally providing false information to the university.

I. People presenting statements, other than the complainant and the respondent, will be excluded from the hearing except when providing statements to the hearing panel. All parties, the people making statements, and the public will be excluded during panel deliberations, which will not be recorded or transcribed.

J. The allegations against the respondent must be established by a preponderance of the evidence.

K. Formal rules of evidence will not be applicable in disciplinary proceedings conducted pursuant to this Code. The hearing administrator will abide by the rules of confidentiality and privilege, but will admit all other matters into evidence which are relevant. The respondent or complainant may challenge the relevance of evidence. Irrelevant or unduly repetitious evidence may be excluded by the hearing administrator. The sexual history or sexual character of a party will not be admissible in disciplinary proceedings unless such information is determined relevant by the

14

hearing administrator.

L.  Complainants and respondents will be accorded an opportunity to ask relevant questions of witnesses who make statements at the hearing.

M.  Written statements will be admitted into evidence only if signed by the person submitting the written statement and witnessed by the director of Student Conduct and Conflict Resolution Services or designee, or if notarized.

N.  A determination of responsibility will be followed by a supplemental proceeding in which either party may submit relevant evidence or make relevant statements concerning appropriate sanctions. The past disciplinary record of the respondent will be supplied to the panel only during the supplementary proceeding.

O.  Any determination of responsibility by majority vote of the hearing panel will be supported by written findings, which will be placed in the case file and made available to the student respondent before a final decision is rendered by the dean of students.

*In cases of sexual harassment, dating violence, domestic violence, rape, sexual assault, sexual exploitation, or stalking, the person identified as the complainant or complaining witness and respondent will be entitled to the same opportunities, including but not limited to: (i) receiving notice of the hearing date at the same time as the respondent; (ii) being present during any disciplinary proceeding; (iii)  receiving simultaneous written notice of the outcome of the disciplinary hearing, of the procedures to appeal the results of any such proceeding as described in Section XVII, of any change to the results that occurs prior to the time the results become final, and when such results become final; and (iv) the right to appeal an outcome as described in Section XVII.*

## XVI. Sanctions

Significant mitigating or aggravating factors will be considered in determining sanctions, including the present demeanor and past disciplinary record of the respondent, the nature of the violation, and the severity of any damage, injury, or harm resulting from it. Repeated or aggravated violations of any part of this Code may also result in relocation or removal from university housing, suspension, or dismissal. Sanctions which may be imposed in accordance with this Code include, but are not limited to:

A.  "Censure"—a written reprimand for violation of specified regulations, including a warning that continuation or repetition of prohibited conduct may be cause for additional disciplinary action.

B.  "Disciplinary Probation"—status assigned for a designated period of time, during which any other violation of the Code may result in removal from university housing, suspension, or dismissal from the university. Students on disciplinary probation may not hold or run for any elected or appointed positions. Additional conditions appropriate to the violation may be imposed.

C.  "Restitution"—repayment of the direct cost to the university for damages resulting from a violation of this Code.

D.  "Relocation in University Housing"—administrative reassignment to a different residence hall

and/or room.

E. "Removal from University Housing"—denial of housing privileges.

F. "Suspension"—exclusion from university premises and other privileges or activities as set forth in the suspension notice. This action will be permanently recorded on the student's academic transcript.

G. "Dismissal"—permanent termination of student status and exclusion from university premises, privileges, and activities. This action will be permanently recorded on the student's academic transcript.

H. "Revocation of Degree"—rescinding a student's degree awarded by the university.

I. "Other Sanctions"—other sanctions may be imposed instead of or in addition to those specified in sections (A) through (G) including, but not limited to, service or research projects.

## XVII. Appeals

Disciplinary determinations may be appealed in keeping with the following provisions:

A. *The complaining witness may only appeal in cases where the complaining witness has a right to know the outcome of the case under the Campus Security Act, as amended. The respondent may appeal any disciplinary decision.*

B. The appeal must be submitted in writing to Student Conduct and Conflict Resolution Services within seven (7) business days after the notice of the case outcome. *In the case where the complaining witness is informed of the case outcome, and an appeal is submitted by the complaining witness or respondent, the other party shall be given an opportunity to respond within seven (7) business days of notification that an appeal has been submitted.*

C. Appeals will be reviewed by an appellate board of the Conduct Council to determine their viability. The appellate board will consist of three (3) persons: one (1) student and two (2) members of the faculty/staff selected from the Conduct Council by the director of Student Conduct and Conflict Resolution Services. The appellate board will be constituted of members who did not serve on the original hearing panel. The appellate board will meet as soon as possible after the appeal is received.

D. The appellate board will determine viability based on the following conditions:

  i.   new information that significantly alters the finding of fact;

  ii.  evidence of improper procedure; or

  iii. insufficient/excessive sanctions.

*In cases where the respondent is found not responsible, either party may submit an appeal, if the case is one in which the complainant/complaining witness has the right to be notified of the outcome.* Decisions of the appellate board about the viability of the appeal are determined by majority vote and are final. Only when deemed

16

viable will the appeal be forwarded to the vice president of Campus Life or designee for review and decision.

E.  The appellate board may deny the request for appeal and affirm the findings of the hearing officer or dean of students, or grant the request for appeal and forward its recommendations to the vice president of Campus Life or designee.

F.  Appeals will be decided based on the notification letter, the outcome letter, the appeal statement, witness statements, and evidence. All written materials considered by the appellate board and vice president of Campus Life or designee will be subject to inspection by the appealing party/parties. New hearings will not be conducted on appeal. Decisions rendered by the vice president of Campus Life or designee are final.

G.  The following standards will apply when appeals are considered by the vice president of Campus Life or designee:

    i.   Sanctions may be increased or decreased, only if found to be substantially disproportionate to the offense.

    ii.  Cases may be remanded for rehearing, only if specified procedural errors or errors in interpretation of university regulations were so substantial as to deny the respondent *(or complainant)* a fair hearing, or if new and significant evidence becomes available that could not have been discovered by a properly diligent student before or during the original hearing.

    iii. Cases may be dismissed, if the finding is held to be unsupported by the evidence.

H.  The imposition of sanctions will be deferred while an appeal is pending, unless, in the discretion of the vice president of Campus Life or designee, the continued presence of the respondent in the residence halls or on the campus poses a substantial threat to him or herself, to others, or to the stability and continuance of normal university functions.

## XVIII. Disciplinary Records

Except as noted below, disciplinary records are maintained by Student Conduct and Conflict Resolution Services for seven (7) years from the date of the letter providing notice of final disciplinary action. Release of disciplinary records to third parties is provided in accordance with the Family Educational Rights and Privacy Act of 1974, as amended (FERPA), until a student has graduated from the university, or as required by law. Records for a student who is suspended, dismissed, or who withdraws with a disciplinary case pending are maintained indefinitely; *release of these categories of disciplinary records to third parties is provided in accordance with all applicable laws, including FERPA and the Campus Sexual Violence Elimination Act.* [See also the Confidentiality of Student Records policy for additional information.] *Amended and approved by the president, August 2015.*

17

## RESIDENCE HALL REGULATIONS

These are implementing regulations, based on American University's Student Conduct Code, and are incorporated as an addendum to that document. Violations of these regulations- may result in referral to Student Conduct and Conflict Resolution Services for review and appropriate action. The residence halls include the halls and any areas contiguous to the halls. Engaging in prohibited conduct may be a violation of both the Student Conduct Code and the residence hall regulations.

### Responsibility for Damage
Residents will be held responsible for damage to residence hall buildings or furniture and will be billed for repair or replacement- where they have caused damage in their own rooms or in common areas. In the event of willful damage to the common areas located in the immediate vicinity of a student's room, or to the furnishings or facilities located therein, if the willful perpetrators of such damage cannot be identified, all resident students served by that common area may be assessed for repair or replacement costs.

### Responsibility for Guests
Residents will be held responsible for the behavior of their guests and any other persons in their residence hall rooms, pertaining- to the regulations for conduct at American University, and may be charged in lieu of the guest or visitor with violating the respective sections of these policies.

The following conduct is expressly prohibited:

### I. Related to Residence Hall Security

1. To enter any residence hall without showing an access card or proper identification to a housing staff member, or upon the request of a staff member.

2. For any visitor not escorted by a resident of that residence hall complex to fail to leave the building upon the request of any housing or university- staff member.

3. For any visitor to enter the building unescorted or fail to be accompanied by a resident escort from that residence hall complex at all times.

4. To escort or permit entrance to any nonresident of a residence- hall who is not known to the student or for whom the student does not assume responsibility as a guest.

5. To prop open outside doors or exit ways without the permission- of a housing staff member.

6. To use any marked fire exit except during a fire alarm.

7. To block any fire door or fire exit.

8. To sound any elevator alarm bell without due cause, or to interfere with the normal operation of elevators.

9. To duplicate any room key or access card.

10. To fail to return a spare key within 10 minutes of signing it out at the front desk.

11. To fail to return room keys upon vacating a room.

12. To go behind the reception desk in any residence hall without- authorization from the resident director.

13. To enter or exit the residence hall through a window when no emergency is present.

14. To enter restricted areas including, but not limited to, building roofs.

## II. Related to Fire Codes

1. To set any fire within the buildings or areas contiguous to the buildings.

2. To use any halogen lamp, broiler oven, electric coffee maker, popcorn popper, microwave oven, hotplate, open burner, or electric water heating device in student rooms, on carpeted floors, in hallways, or other non-designated areas.

3. To cook indoors with charcoal or any open flame device.

4. To possess or burn any candle or incense indoors.

5. To keep any refrigerator with an electrical requirement exceeding seven (7) amps.

6. To fail to immediately evacuate the buildings properly when a fire alarm sounds or to reenter any building during a fire alarm before receiving permission from a housing or Public Safety staff member.

7. To tamper with fire equipment, or to carry or remove fire extinguishers from their mounts or storage boxes except in case of a fire.

8. To pull or activate any fire alarm when no fire is present, or to falsely report any fire or other emergency.

9. To use electrical lights and appliances totaling more than 850 watts in a student room at any one time.

10. To disconnect, sound, or otherwise tamper with any smoke detector.

11. To run electrical wires beneath any rug or carpet.

12. To smoke anywhere other than in areas where smoking is permitted. Smoking is prohibited in all residence halls.

### III.  Related to Property

1.  To remove furniture from any common area without authorization of housing staff.
2.  To keep any unauthorized student furniture designated for other areas in student rooms.

3.  To place waterbeds in student rooms.

4.  To keep any pet, except fish, in student rooms.

5.  To remove any wall-mounted furniture.

6.  To mark or deface any surface (e.g., door, wall, carpet).

7.  To mark, deface, steal, harbor, or damage any property belonging to the university, any hall, resident, or commercial vendor (such as vending machines, video games, washing machines, dryers, or telephone equipment).

### IV. Other Prohibited Conduct

1.  To engage in any disorderly conduct or to interfere with the rights of other students in their academic pursuits. This specifically- and especially pertains to other residents' rights to an environment conducive to study and to sleep.

2.  To engage in sports activity within the residence halls.

3.  To engage in sports activity or to create excessive noise within 50 feet of any residence hall.

4.  To shout or to otherwise create disturbances from any residence- hall window.

5.  To create excessive noise by any means. This will include playing loudspeakers through room windows at any time and noise audible outside a student room or in public areas, especially, but not limited to after 11 p.m. Sunday through Thursday, or past 1 a.m. on weekends. These times are considered- quiet hours.

6.  To drop or throw any object or any liquid from windows.

8.  To keep dangerous materials, including but not limited to, firearms, air or CO2-powered weapons, fireworks, and dangerous- weapons.

9.  To use, or possess any illegal drug (including medical marijuana) or drug paraphernalia in the residence halls.

10. To sell, manufacture, or distribute any illegal drug (including medical marijuana) or drug paraphernalia in the residence halls.

11. To knowingly and voluntarily be in the presence of any illegal- drug (including medical marijuana) or drug paraphernalia in the residence halls.

20

12. To violate university policies pertaining to the use or possession of alcohol in the residence halls.

13. To violate university policies pertaining to the sale, manufacture, or distribution- of alcohol in the residence halls.

14. To knowingly and voluntarily be in the presence of alcohol in the residence halls.

15. To refuse to follow a directive from a housing staff member when acting in the performance of his or her duties.  Directive may include but are not limited to:  directive to produce student identification, directive to remain in the area, and directive to allow staff entry to a residential space to investigate possible health/safety emergencies or suspected violations of University policy.

16. To solicit, canvass, post, or distribute any materials within the residence halls without the approval of the resident director or to violate the university or residence hall posting policies.

17. To have an overnight guest without the roommate(s)'s consent.

18. To have a guest visit in the residence halls for longer than three (3) days. Repeated visits by guests over extended periods may be considered unauthorized occupancy of a room by the guest.

19. The university reserves the right to prohibit repeated, extended visits.

*Amended and approved by the vice president of Campus Life April 2008, amended and approved June 2011, amended and approved June 2014, amended and approved August 2015.*