# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:19-cv-03097-APM |
| v. | ) | |
| | ) | |
| AMERICAN UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# DEFENDANT'S REPLY IN SUPPORT OF
# MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES** ..................................................................................................ii

**ARGUMENT** .........................................................................................................................3

I.      Doe Fails to State a Viable "Erroneous Outcome" Claim Under Title IX. .....................3

II.     Doe's D.C. Human Rights Act Claims are Fatally Flawed. ..........................................18

III.    Doe Fails to State Viable Contract Claims. ..................................................................18

      A.      Doe has not alleged the breach of an enforceable contract..............................18

      B.      Doe fails to state a claim for breach of the implied covenant of good faith and fair dealing. ..................................................................22

IV.     Doe Fails to State a Claim for Negligence....................................................................23

**CONCLUSION** .....................................................................................................................25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................4

*Austin v. Univ. of Or.*,
  205 F. Supp. 3d 1214 (D. Or. 2016) ...................................................................24

*Austin v. Univ. of Or.*,
  925 F.3d 1133 (9th Cir. 2019) ...............................................................4, 11, 13

*B.B. v. The New Sch.*,
  2018 WL 2316342 (S.D.N.Y. Apr. 30, 2018).......................................................5

*Basch v. George Wash. Univ.*,
  370 A.2d 1364 (D.C. 1977) .................................................................................20

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................3, 18, 25

*Bradley v. Nat'l Collegiate Athletic Ass'n*,
  249 F. Supp. 3d 149 (D.D.C. 2017).....................................................................24

*Briscoe v. Costco Wholesale Corp.*,
  61 F. Supp. 3d 78, 83 (D.D.C. 2014) .............................................................13, 22

*Chenari v. George Wash. Univ.*,
  847 F.3d 740 (D.C. Cir. 2017)..............................................................................19

*Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*,
  526 U.S. 629 (1999)................................................................................................3

*Doe v. Amherst Coll.*,
  238 F. Supp. 3d 195 (D. Mass. 2017) .............................................................17, 24

*Doe v. Columbia Coll. Chi.*,
  299 F. Supp. 3d 939 (N.D. Ill. 2017) ...................................................................24

*Doe v. Columbia Coll. Chi.*,
  933 F.3d 849 (7th Cir. 2019) .........................................................................11, 16

*Doe v. Columbia Univ.*,
  831 F.3d 46 (2d Cir. 2016)....................................................................................17

*Doe v. Cummins,*
  662 F. App'x 437 (6th Cir. 2016) ...................................................9, 11, 12, 16

*Doe v. George Wash. Univ.* ("*GWU II*"),
  321 F. Supp. 3d 118 (D.D.C. 2018) ...........................................................22

*Doe v. George Wash. Univ.* ("*GWU I*"),
  366 F. Supp. 3d 1 (D.D.C. 2018) ........................................................ *passim*

*Doe v. Loh,*
  2018 WL 1535495 (D. Md. Mar. 29, 2018) ................................................15

*Doe v. Loh,*
  767 F. App'x 489 (4th Cir. 2019) ...............................................................11

*Doe v. Marymount Univ.,*
  297 F. Supp. 3d 573 (E.D. Va. 2018) ......................................................9, 24

*Doe v. Miami Univ.,*
  882 F.3d 579 (6th Cir. 2018) .............................................................4, 15, 17

*Doe v. Ohio State Univ.,*
  239 F. Supp. 3d 1048 (S.D. Ohio 2017) ....................................................17

*Doe v. Princeton Univ.,*
  2019 WL 5491561 (3d Cir. Oct. 25, 2019) ..................................................4

*Doe v. Rector & Visitors of George Mason Univ.,*
  132 F. Supp. 3d 712 (E.D. Va. 2015) .........................................................16

*Doe v. Rider Univ.,*
  2018 WL 466225 (D.N.J. Jan. 17, 2018) ......................................................5

*Doe v. Syracuse Univ.,*
  341 F. Supp. 3d 125 (N.D.N.Y. 2018) ........................................................17

*Doe v. Univ. of Chi.,*
  2017 WL 818859 (N.D. Ill. Mar. 2, 2017)..................................................20

*Doe v. Univ. of Cincinnati,*
  173 F. Supp. 3d 586 (S.D. Ohio 2016) ..................................................10, 12

*Doe v. Univ. of Cincinnati,*
  2018 WL 1521631 (S.D. Ohio Mar. 28, 2018)...........................................12

*Doe v. Univ. of Colo., Boulder through Bd. of Regents of Univ. of Colo.,*
  255 F. Supp. 3d 1064 (D. Colo. 2017) ..................................................10, 15

*Doe v. Univ. of Dayton,
    766 F. App'x 275 (6th Cir. 2019) ...............................................................11, 12

Doe v. Univ. of Or.,
    2018 WL 1474531 (D. Or. Mar. 26, 2018) ...............................................................9

Doe v. Univ. of the S.,
    687 F. Supp. 2d 744 (E.D. Tenn. 2009) ...................................................................3

Doe v. Univ. of Scis.,
    2019 WL 3413821 (E.D. Pa. July 29, 2019) ...........................................................8

Doe v. Univ. of St. Thomas,
    240 F. Supp. 3d 984 (D. Minn. 2017) ...............................................................3, 16

Doe v. Vanderbilt Univ.,
    2019 WL 4748310 (M.D. Tenn. Sept. 30, 2019) ...................................................12

Faparusi v. Case W. Reserve Univ.,
    2016 WL 8794464 (N.D. Ohio Nov. 30, 2016) .....................................................10

Giles v. Shell Oil Corp.,
    498 A.2d 610 (D.C. 1985) .....................................................................................25

Greene v. Howard Univ.,
    412 F.2d 1128 (D.C. Cir. 1969) ............................................................................19

Hajjar-Nejad v. George Wash. Univ.,
    37 F. Supp. 3d 90 (D.D.C. 2014) .....................................................................19, 23

Harnois v. Univ. of Mass. at Darmouth,
    2019 WL 5551743 (D. Mass. Oct. 28, 2019) ..........................................................9

Hedgepeth v. Whitman Walker Clinic,
    22 A.3d 789 (D.C. 2011) .......................................................................................23

Marshall v. Ohio Univ.,
    2015 WL 7254213 (S.D. Ohio Nov. 17, 2015) .......................................................8

Messeri v. Univ. of Colo., Boulder,
    2019 WL 4597875 (D. Colo. Sept. 23, 2019) .......................................................15

Noakes v. Syracuse Univ.,
    369 F. Supp. 3d 397 (N.D.N.Y. 2019) ...............................................................9, 17

*North v. Catholic Univ. of Am.,
    310 F. Supp. 3d 89 (D.D.C. 2018) ........................................................................24

*Prasad v. Cornell Univ.*,
  2016 WL 3212079 (N.D.N.Y. Feb. 24, 2016) .......................................................9

*Pride v. Howard Univ.*,
  384 A.2d 31 (D.C. 1978) ......................................................................................18

*\*Richter v. Catholic Univ. of Am.*,
  2019 WL 481643 (D.D.C. Feb. 7, 2019) .............................................................23

*Rolph v. Hobart & William Smith Colls.*,
  271 F. Supp. 3d 386 (W.D.N.Y. 2017) .................................................................17

*Ruff v. Bd. of Regents of Univ. of New Mexico*,
  272 F. Supp. 3d 1289 (D.N.M. 2017) .............................................................12, 13

*Salau v. Denton*,
  139 F. Supp. 3d 989 (W.D. Mo. 2015) .................................................................16

*\*WMATA v. Quik Serve Foods, Inc.*,
  2006 WL 1147933 (D.D.C. Apr. 28, 2006) ..........................................................23

*Z.J. v. Vanderbilt Univ.*,
  355 F. Supp. 3d 646 (M.D. Tenn. 2018) ................................................................9

## Other Authorities

U.S. Dep't of Educ., Office of Civil Rights, *Q&A on Campus Sexual Misconduct*
  (Sept. 2017)............................................................................................................8

*Restatement (First) of Contracts* § 32 (1932) ..............................................................20

Doe's Opposition ("Opp.") to AU's Motion to Dismiss ("Mot.") fails to raise a serious issue that AU's disciplinary process was inconsistent with its policies, procedures, and its federal obligations under Title IX, and makes it clear that judicial review of AU's actions here is unwarranted. Doe points to no *specific facts* indicating that the proceeding was tainted by gender bias, or that AU failed to comply with its Code or Policy; rather his allegations are conclusory and speculative. In contrast, the Complaint and documents incorporated therein demonstrate that AU's determination that Doe engaged in sexual activity with Roe without her "clear consent," in violation of AU's Code and Policy, was (1) based on Doe's *own* description of the underlying sexual conduct; and (2) the result of an extensive investigation and adjudication process, consistent with AU's Code and Policy, and Title IX, free of any hint of gender bias.

Title IX does not establish Article III courts as a secondary appellate tribunal for dissatisfied respondents to challenge disciplinary determinations that AU—or any other school— renders, pursuant to its policies and procedures and legal mandate to combat sexual harassment and discrimination on campus. And the law certainly does not prescribe the far-reaching ramifications that allowing such complaints to proceed without an adequate basis would impose on schools, as well as the courts. Devoid of any *specific factual allegations* that, if true, would show gender-motivated bias or breaches of enforceable provisions of the Code or Policy, Doe's claims must be dismissed.

In an effort to reverse AU's determination and sanction, Doe raises a cacophony of "procedural irregularities," allegations, and claims of "public pressure" on AU "to be tough on male respondents" (Opp. at 22)—to attempt to manufacture a plausible inference that he was wrongly found "responsible" for non-consensual sexual contact *because he is a male*. However, none of the alleged "irregularities" raise any question about the reasonableness or validity of

AU's final determination, following its lengthy investigation and review process.  And the supposed instances of "public pressure" to which Doe points, even taken together, fail to make out a plausible inference that AU's decision was motivated by gender bias.

Neither do Doe's allegations that Roe did not explicitly *object* to his conduct (Compl. ¶101), or that he interpreted Roe's movement of his head as "consent" (Compl. ¶¶173-74), render the Investigator's conclusion that Doe acted without Roe's clear consent erroneous.  And Doe's suggestion that AU's rejection of Roe's accusations against a different student somehow refutes her credibility with respect to her allegations against Doe fails to raise a plausible inference that the University's determination of Doe's responsibility in *this* case was wrong. This is especially so where that determination was based on Doe's own statements regarding his actions.  Indeed, if anything, AU's determination that a different male respondent was "not responsible" for similarly serious sexual misconduct alleged by Roe *refutes* Doe's argument that AU was motivated by gender (or any) bias against male respondents.  Finally, Doe's heavy reliance on Judge Collyer's decision in *Doe v. George Washington University*, 366 F. Supp. 3d 1 (D.D.C. 2018) ("*GWU I*") as determinative of the claims here is misguided.  *GWU I* is factually distinct from the instant case, inconsistent with the weight of authority for some propositions, and is not binding on this Court.

While focusing on these dead-end arguments, Doe conveniently ignores the numerous *specific facts* admitted in his Complaint or set forth in the "record before the disciplinary tribunal"—incorporated into the Complaint and essential to this Court's consideration of his claims—that reflect an unbiased and gender-neutral process in which AU complied with its Code and Policy, reaching an outcome fully supported by the evidence.  It is not the Court's role to second-guess the Investigator's assessment of the testimony and evidence, absent some

indication of unlawful bias or arbitrariness.  Rather, the Court's proper focus is whether Doe has

alleged *specific facts* that plausibly show the process was unfair, gender-biased, or in

contravention of AU's Code and Policy.  Doe has failed to plead "a claim . . . that is plausible on

its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and, as in other cases based

on similarly conclusory and unsupported allegations, his claims should be dismissed.  *See* Mot.

at 7.

## ARGUMENT

"As a general rule, Title IX is not an invitation for courts to second-guess disciplinary

decisions of colleges or universities."  *See Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d 984, 989-

90 (D. Minn. 2017) (citing *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629,

648-49 (1999)).  "And Title IX should be construed to give '[s]chool administrators . . . the

flexibility they require' to initiate a reasonable disciplinary response."  *Id*. at 990 (quoting *Davis*,

526 U.S. at 648-49); *see also Doe v. Univ. of the S.*, 687 F. Supp. 2d 744, 755 (E.D. Tenn. 2009).

In short, "the law does not allow th[e] Court to retry the [u]niversity's disciplinary proceeding."

*Univ. of the S.*, 687 F. Supp. 2d at 755.  But that is exactly what Doe seeks the Court to do here,

both under Title IX and common law.  All of those efforts fail.

## I.    Doe Fails to State a Viable "Erroneous Outcome" Claim Under Title IX.

Doe's Title IX claim seeks to overturn AU's adverse disciplinary determination against

him, based on strained readings of AU's policies and procedures, unsupported assertions of

limitations on AU's authority to act, and implausible and refuted allegations of anti-male bias.

Doe does not—and cannot—sufficiently plead a claim of *intentional gender discrimination* as

required to state a Title IX claim.  Indeed, the documents incorporated into the Complaint show

that Doe's claim of gender bias is little more than an afterthought—a convenient vehicle for

Doe's ever-changing attempts to obtain a "super-appeal" of AU's finding and sanction based on

3

his dissatisfaction alone.  *See* Doe's Appeal (Mot. Ex. 6) (suggesting that the process was biased against Doe due to his race and national origin and making no mention whatsoever of any potential gender bias).

Doe cannot state a viable claim under Title IX by simply dressing up his disagreement with the outcome of his disciplinary proceeding with conclusory allegations that the defendant's actions were motivated by gender bias, wholly unsupported by any specific facts that plausibly support such a claim.  That is precisely why pleading standards exist.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("an unadorned, the-defendant-unlawfully-harmed-me accusation" will not survive a motion to dismiss, nor will a complaint comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Recognizing that he cannot plead sufficient facts to meet *Iqbal*'s and *Twombly*'s plausibility standard, Doe misleadingly asserts that "[c]ourts throughout the country apply the Title VII pleading standard to Title IX claims" and suggests that Judge Collyer in *GWU I* did as well.  Opp. n.3.  In truth, the Second Circuit is the *only* Court of Appeals that has applied the relaxed *McDonnell-Douglas* Title VII pleading standard to Title IX claims at the motion to dismiss stage.  Indeed, the Sixth, Ninth, and Third Circuits have expressly *rejected* a lower pleading standard for Title IX cases.  *See Doe v. Miami Univ.*, 882 F.3d 579, 588-89 (6th Cir. 2018); *Austin v. Univ. of Or.*, 925 F.3d 1133, 1136-37 (9th Cir. 2019); *Doe v. Princeton Univ.*, 2019 WL 5491561, at *2 n.3 (3d Cir. Oct. 25, 2019) (unpublished).  As observed even in *GWU I*, the D.C. Circuit has not adopted this lower pleading standard for Title IX cases.  *See* 366 F. Supp. 3d at 12 (noting that the D.C. Circuit has yet to address the issue and declining to decide which standard applies).

Applying the proper standard, Doe's Opposition simply confirms the insufficiency of his

Complaint, as he does not point to any particularized factual allegations that demonstrate how AU's conduct in investigating and adjudicating the claims against him, *based on the record before it*, warrant plenary judicial scrutiny, much less a finding of liability under Title IX. Indeed, Doe points to nothing that remedies his Complaint's failure to plausibly allege facts sufficient to: (1) "cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding," or (2) demonstrate a "particularized causal connection between the flawed outcome and gender bias." Mot. at 9. *Both* are required to sustain his erroneous outcome claim. But *neither* is adequately alleged here.

**"Articulable Doubt."** Doe's Complaint and the documents incorporated therein belie any attempt to cast "articulable doubt" on the outcome of his disciplinary proceeding. The law is clear that "[i]f no [articulable] doubt exists based on the record before the disciplinary tribunal, the claim must fail." *Doe v. Rider Univ.*, 2018 WL 466225, at *8 (D.N.J. Jan. 17, 2018) (unpublished). Doe argues that his burden is "not heavy" (Opp. at 13), but students found "responsible" do not have *carte blanche* to subject universities and their officials to judicial review of every adverse decision, and they must meet Title IX's pleading standards, applied to the record before the disciplinary tribunal. Here, Doe alleges no "particularized strengths of the defense" or "motive to lie" by Roe or any other witness, *Rider University*, 2018 WL 466225, at *8, and makes only conclusory, unsupported statements that "procedural flaws" affected the proof. Opp. at 13-17. This is far from enough. *See, e.g.*, *B.B. v. The New Sch.*, 2018 WL 2316342, at *5-7 (S.D.N.Y. Apr. 30, 2018) (no "articulable doubt" where (1) the "panel heard testimony from [p]laintiff, [c]laimant, and the [w]itness, reviewed contemporaneous evidence such as text and social media messages, and concluded . . . [p]laintiff was more likely than not responsible for sexual misconduct;" (2) the purported flaws were rebutted by documents quoted

in the complaint; and (3) the complaint failed to allege *particular facts* elaborating how the outcome was wrong).

Nothing in Doe's Complaint or his Opposition plausibly casts "articulable doubt" on the Investigator's finding *based on the record before her*. Faced with disparate accounts of the evening at issue, the Investigator based her finding that Doe was "not responsible" for the charges of Rape and Sexual Exploitation, and "responsible" for the charge of Sexual Assault, on *Doe's own factual account* of the events. Report at 16-18 (Mot. Ex. 1). This included Doe's admission that he touched Roe's breasts and attempted oral sex over her clothes, and that she "did not object or otherwise express discomfort" regarding the former, and he "assumed" her consent to the latter. Compl. ¶¶3, 50. Crediting and relying upon *Doe's* factual account, the Investigator concluded that it was more likely than not that Doe did not have Roe's "clear consent" under the Policy or Code to his sexual contact with her. *See* Policy at 3 (Compl. Ex. 3) ("[s]exual contact will be considered 'without consent' if no clear consent, verbal or nonverbal, is given"). Doe had the opportunity to dispute the Investigator's findings based on her multiple interviews of him when he reviewed and provided detailed comments on a draft of the Investigation Report, but he did not. *See* Report Ex. K (Mot. Ex. 3). Indeed, Doe continues to reiterate these same facts in his Complaint. *See, e.g.*, Compl. ¶3.

The Investigator's finding, based on the preponderance of the evidence standard, that Doe acted without consent as defined in AU's Code and Policy, was reasonable, supported by the record before her, and should be accorded deference. Doe tries to avoid the clear reasoning of the Investigator's decision by failing to attach, and only selectively quoting from, her 18-page single spaced Report in his Complaint. Doe then accuses AU of trying to avoid the "facts of the case," which he claims "would show just how incomplete and unfair its disciplinary process was

for Mr. Doe." *See, e.g.*, Opp. at 1-2. Unlike Doe, AU has nothing to hide. Accordingly, AU attached to its Motion full copies of documents Doe only selectively referenced and quoted in his Complaint, so the Court will have a clear picture of the disciplinary process it followed.

The gist of Doe's argument is that Roe was not believable and that AU could have done more to seek out evidence that may have contradicted her story. *See* Opp. at 13-14 ("Doe alleges significant reasons not to believe Ms. Roe's allegations[.]"). But that simply ignores that the Investigator credited *Doe's* account of the events and based her finding on the one charge for which he was found "responsible" on Doe's own testimony. Doe also makes unfounded conclusory assertions, contrary to the Investigator's detailed and lengthy Report, that the Investigator "failed to investigate or question" Roe, "ignored" testimony and text message evidence, and "drew prejudicial conclusions." Opp. at 14. There is no factual predicate for such conclusions. The Report plainly shows that the Investigator addressed and grappled with all the proffered testimony and evidence, including text messages between Roe and Doe. Report at 14-18. Doe even asserts that the Investigator "ignored eyewitness testimony from male witnesses" when it is clear she acknowledged both H.S.'s and C.S.'s testimony but found it less probative since they were not eyewitnesses to the sexual touchings at issue. Opp. at 14; Report at 8-11, 16.

Doe also argues that the Investigator failed to interview "key" witnesses beyond the multiple contemporaneous witnesses she interviewed (Opp. at 14), but offers no explanation for how these witnesses were "key" (especially given the Investigator's reliance on Doe's own account), much less what these witnesses would have said that might have compelled a different result. Indeed, Doe fails to allege *any* facts suggesting that additional witnesses or evidence would have impacted the Investigator's conclusion that Doe's own description of his sexual advances reflected the absence of Roe's "clear consent." Significantly, the Investigator afforded

both Doe and Roe multiple opportunities to identify witnesses and evidence, and Doe does not

allege that the Investigator refused to interview *any* suggested witnesses or consider *any*

proffered evidence.

Doe also alleges as a purported "error" that AU never provided him with Roe's "written

complaint." But Doe pleads no facts indicating that Roe actually submitted a written complaint

(which the Code and Policy do not require). Opp. at 15; Code at 18 (Compl. Ex. 6) (referencing

a "formal complaint" but no requirement that it be in writing). Nor would the absence of any

"formal" complaint (written or otherwise) relieve AU of its Title IX obligations to investigate

and respond to reports of sexual misconduct. *See* U.S. Dep't of Educ., Office of Civil Rights,

*Q&A on Campus Sexual Misconduct*, 1 (Sept. 2017), *available at*

https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf.[1]

Having failed to allege a single procedural flaw casting doubt on the Investigator's

findings, Doe is left merely asserting that the Investigator interpreted the facts incorrectly and

that the Investigator, and the Sanctioning and Appeals Panels, reached the wrong conclusion.

This is manifestly insufficient to satisfy his pleading burden. *See, e.g.*, *Doe v. Univ. of Scis.*,

2019 WL 3413821, at *5 (E.D. Pa. July 29, 2019) (no "articulable doubt" where "[a]t most,

[plaintiff] ha[d] compiled a list of generalized complaints about the [u]niversity's disciplinary

process unmoored from any actual impact on the accuracy of *his* specific process") (appeal

filed); *Marshall v. Ohio Univ.*, 2015 WL 7254213, at *6 (S.D. Ohio Nov. 17, 2015) (no

---

[1] Citing to 2001 Guidance, the DoE stated: "[w]hether or not a student files a complaint . . . or otherwise asks the school to take action, where the school knows or reasonably should know of an incident of sexual misconduct, the school must take steps to understand what occurred and to respond appropriately." The Q&A was issued in September 2017 pending formal "rulemaking on the topic of schools' Title IX responsibilities concerning complaints of sexual misconduct," and cited to 2001 Guidance. *See* 2017 Q&A at 1, 7; *see also* AU's Opposition to Doe's Motion for Partial Summary Judgment at 16-17.

"articulable doubts" where plaintiff admitted to conduct that violated the school's policies).[2]

**Gender Bias.** Doe also fails in his Opposition to identify a single plausible allegation in his Complaint that AU's decision was motivated by gender bias, as is independently required to withstand dismissal. As one district court recently emphasized: "courts must look with a critical eye to determine whether a plaintiff plausibly alleges the required causal connection . . . as opposed to merely making *untethered, vague, or conclusory allegations of discrimination*." *Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646, 682 (M.D. Tenn. 2018) (emphasis added). As set forth in AU's Motion at 13-14, to satisfy this second prerequisite for an erroneous outcome claim, a plaintiff must allege "*particular circumstances* suggesting that gender bias was a *motivating factor* behind the erroneous finding," such as "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Doe v. Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016) (unpublished) (citation omitted).

This is not a "new standard" that AU "craft[ed]" for purposes of its Motion, as Doe suggests. Opp. at 17-19. The quoted language comes directly from the Title IX jurisprudence, and courts routinely assess these "*type[s]*" (Mot. at 13 (emphasis added)) of allegations when

---

[2] The cases Plaintiff cites in his Opposition do not require a different result, as those cases involved *non-conclusory, particularized* allegations of procedural deficiencies affecting the record or of significant unfair, lopsided procedures. *See, e.g.*, *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 584 (E.D. Va. 2018) (denying student the opportunity to identify potential witnesses or meet with the adjudicator in-person); *Noakes v. Syracuse Univ.*, 369 F. Supp. 3d 397, 414 (N.D.N.Y. 2019) (ignoring evidence that "would have made it impossible for" the student to be the perpetrator); *Prasad v. Cornell Univ.*, 2016 WL 3212079, at *15 (N.D.N.Y. Feb. 24, 2016) (casting the student's actions in "highly inflammatory terms" and denying the student an opportunity to review the investigators' reports); *Harnois v. Univ. of Mass. at Dartmouth*, 2019 WL 5551743, at *6 (D. Mass. Oct. 28, 2019) (failing to interview *any* of the student's proffered witnesses); *Doe v. Univ. of Or.*, 2018 WL 1474531, at *2 (D. Or. Mar. 26, 2018) (allowing the complainant, but not the accused student, to add new evidence to the record after a hearing).

determining if the *requisite* causal connection has been sufficiently alleged. *See, e.g.*, *Faparusi v. Case W. Reserve Univ.*, 2016 WL 8794464, at *4 (N.D. Ohio Nov. 30, 2016), *aff'd*, 711 F. App'x 269 (6th Cir. 2017) (unpublished) ("[T]he complete absence of any factual allegations that include statements by members of the disciplinary tribunal itself, statements from pertinent university officials or patterns of decision-making from past decisions that show the influence of gender bias, reduce the current complaint to [a] single case of an aggrieved individual who was displeased with the result in his case."); *see also* Mot. at 13-18 (citing cases dismissing erroneous outcome claims).

Although Doe improperly tries to bolster his Complaint by alleging new facts in his Opposition, even these facts, if considered by the Court, would fail to evidence any plausible gender bias. And, Doe ignores the facts in his own Complaint that *undermine* his conclusory allegations of gender bias—including that in the *only* comparator case Doe provides, the *same Investigator* found another male student (H.S.) "not responsible" for similarly serious charges, which included allegations that he and another male friend "physically assaulted [Roe], exposed their penises to her, and urinated in front of her." Opp. at 4 (citing Compl. ¶10). *See, e.g.*, *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 608 (S.D. Ohio 2016) (no plausible inference of gender bias where plaintiff's complaint showed that males were not invariably found "responsible" for sexual misconduct charges, in part, because one of the plaintiffs was found "not responsible" for one of the charges).

Doe also fails to address the heavy weight of authority dismissing "erroneous outcome" claims just like his for failing to plausibly allege gender bias, and misleadingly and inaccurately implies that Courts of Appeals have predominantly refused to dismiss similar "erroneous outcome" claims. Opp. at 24; *see, e.g.*, *Doe v. Univ. of Colo., Boulder through Bd. of Regents of*

*Univ. of Colo.*, 255 F. Supp. 3d 1064, 1074, 1078 (D. Colo. 2017) (rejecting, as conclusory and insufficient, allegations that the university was subject to an ongoing DoE investigation regarding its handling of sexual misconduct complaints, and explaining that **"[a] majority of cases [ ] have held that *Yusuf*–like pleading of the gender bias component no longer passes muster [post–*Iqbal*],** and that the various plaintiffs' allegations largely tend to show, if anything, pro-victim bias, which does not equate to anti-male bias") (emphasis added). Indeed, the Fourth, Sixth, Seventh, and Ninth Circuits *all* have affirmed dismissal of analogous "erroneous outcome" claims at the motion to dismiss stage precisely for the same reasons AU outlined in its Motion.[3] Unlike the cases on which Doe relies, the allegations in his Complaint are "mere conclusory statements, unsupported by sufficient factual allegations to make their claims plausible." *Cummins*, 662 F. App'x at 452. As the Seventh Circuit aptly stated, "Doe does not allege the particularized 'something more' that is required to survive a motion to dismiss." *Columbia Coll. Chi.*, 933 F.3d at 856.

Doe attempts to prop up his claims of gender bias by referencing (1) external and internal "pressure" on AU; (2) the Investigator being an "advocate" for sexual assault training on campus; and (3) purported "irregularities" in the investigation and adjudication of the allegations against him. All of these—even considered in combination—fail.

*"Pressure."* Doe's "pressure" allegations fall short because the alleged "pressure"

---

[3] *See Austin*, 925 F.3d at 1137-38; *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 856 (7th Cir. 2019); *Doe v. Loh*, 767 F. App'x 489, 491 (4th Cir. 2019) (unpublished); *Doe v. Univ. of Dayton*, 766 F. App'x 275, 281-82 (6th Cir. 2019) (unpublished); *Cummins*, 662 F. App'x at 452-54. Indeed, the only Court of Appeals that has addressed "erroneous outcome" claims at the motion to dismiss stage and has yet to dismiss any is the Second Circuit which, as discussed above, uses a relaxed pleading standard that has not been adopted by other Circuits.

sources are far too remote in time;[4] they are not gender-based but rather address "victims" and "perpetrators" without regard to gender;[5] and they lack any "concrete link" between such "pressures" and the results of *his* case.[6] The heart of Doe's "pressure" allegations is that AU is facing "five active OCR investigations." Opp. at 20. But the mere existence of such investigations, without more, does not raise a plausible inference of gender bias—particularly as Doe has made only vague or conclusory allegations as to the nature of the claims in these investigations, and how they would pressure AU to respond in a biased manner to male respondents. Indeed, if the existence of OCR investigations was enough to sufficiently allege gender bias, Title IX claims could be brought against nearly any college or university in the country, regardless of the specific facts of the underlying disciplinary proceeding, and every single male respondent at AU with an adverse outcome could bring a Title IX claim against the University.

Here, Doe tries in his Opposition to "amend" his Complaint to allege, for the first time, two OCR investigations of an unspecified nature that are nowhere referenced in the Complaint. While it is axiomatic that "[a]n opposition brief cannot be used to put forth new allegations . . .

---

[4] *See, e.g.*, *Univ. of Dayton*, 766 F. App'x at 282 (rejecting allegation of OCR "pressure," where plaintiff failed to allege that "the University . . . fac[ed] substantial public pressure or outcry in the weeks leading up to his hearing"); *Cummins*, 662 F. App'x at 452-53 (similar).

[5] *See, e.g.*, *Doe v. Vanderbilt Univ.*, 2019 WL 4748310, at *7 (M.D. Tenn. Sept. 30, 2019) ("[W]hen courts consider allegations of external pressure, they look to see if a plaintiff has alleged facts demonstrating that it was pressure not only to 'aggressively pursue sexual assault cases, but to do so in a manner biased against males.'") (citation omitted); *Ruff v. Bd. of Regents of Univ. of New Mexico*, 272 F. Supp. 3d 1289, 1302 (D.N.M. 2017) (similar); *Univ. of Cincinnati*, 173 F. Supp. 3d at 606-07.

[6] *See, e.g.*, *Univ. of Dayton*, 766 F. App'x at 281 ("To allege a particularized causal connection, we have generally required plaintiffs to point to some hint of gender bias *in their own disciplinary proceedings*.") (emphasis added); *Doe v. Univ. of Cincinnati*, 2018 WL 1521631, at *6 (S.D. Ohio Mar. 28, 2018) (rejecting "public pressure" allegations because they were not "focused on [p]laintiff's disciplinary proceedings, as opposed to [the school's] handling of sexual assault on campus more generally").

and as such, the Court must ignore those facts for the purposes of deciding [a] motion [to dismiss]," the two additional OCR investigations do not help Doe in any event. *Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 83 n.2 (D.D.C. 2014). Doe alleges *no facts* regarding their relevance to his case, much less how they possibly illustrate gender bias in AU's investigation of his conduct.

But even with respect to the three investigations Doe did allege, in addition to being two to four years removed from the 2019 disciplinary proceeding at issue here, they do not create a plausible inference of gender bias because there are no allegations connecting any aspect of these investigations to *gender*-based decision-making. For example, Doe does not allege the gender of the individual whose complaint led to the 2014 OCR investigation, the nature of the complaint, or "what prompted the investigation." Compl. ¶70. And Doe admits that the 2015 OCR investigation and related protests (though stemming from a complaint to OCR by a female complainant) were about the University's confidentiality policy for sexual misconduct proceedings, not about investigating or disciplining male students. *Id.* ¶72. Indeed, Doe alleges that the most recent investigation (2017) stemmed from a complaint to OCR by an accused *male* student (*id.* ¶83), which, under Doe's theory, should mean that AU would feel pressure to treat accused male students *more* favorably. In short, Doe alleges no facts about these investigations from which "pressure" on AU plausibly could be inferred to be "tough" on male respondents *because they are male*. *See Austin*, 925 F.3d at 1138 ("The complaint recites such facts as . . . campus protests, but does not make any plausible link *connecting these events* and the [u]niversity's disciplinary actions to the fact that the [plaintiffs] are *male*.") (emphasis added).[7]

---

[7] *See also* Mot. at 16-17; *Ruff*, 272 F. Supp. 3d at 1302 (finding allegations of, *inter alia*, pressure from the student body and media and a DOJ investigation that threatened the school's

Doe's other allegations of "pressure" fare no better.  He relies on events that are two to five years removed from the 2019 investigation at issue and/or have no connection to gender or anti-male bias.  *See* Compl. ¶¶68-69 (citing events that allegedly put pressure on AU to "take action" against a fraternity for graphic comments, as opposed to males generally); ¶¶90-91 (alleging AU cancelled one event in 2017 relating to "feminism, free speech, and Title IX" that would have "presented a critical view of how colleges apply Title IX in the student disciplinary process"); ¶28 (alleging that in 2017, in response to "pressure" AU adopted a single-investigator model, but not alleging this model is biased against males as opposed to merely being "survivor-friendly"); ¶¶86-87 (alleging negative student reactions to "OCR's new guidance" but not alleging that the students' reactions expressed anything other than pro-victim sentiments).

Without specific facts, Doe seems to rest his "gender bias" argument nearly entirely on another district court's holding in *GWU I*—a decision that is both non-binding, and factually and analytically distinct from this case for several reasons.  That case was decided after a complicated history in which the court had previously addressed motions for preliminary injunction and partial summary judgment and mandated that the school reconsider the plaintiff's appeal in light of GWU's failing to comply with appellate procedures that were different from AU's.  Moreover, contrary to Doe's assertion that *GWU I* relied on "the exact same sort of evidence" as exists here (Opp. at 1), there were additional, specific allegations in that case that persuaded Judge Collyer that the complaint plausibly alleged gender bias.  These included*, inter alia*, two OCR investigations "*targeting [the school's] disciplinary practices*" and stemming from *complaints filed by female students*, and "two other ongoing *federal lawsuits*, brought *by*

---

federal funding were "wholly conclusory" allegations and did not support a plausible inference of gender bias).

*female students* against [the school] for its *recent* handling of their sexual assault claims." 366 F. Supp. 3d at 12 (emphasis added). Judge Collyer also relied on the allegation that the complainant in the underlying investigation "**herself . . . publicly pressured [the school] for stronger Title IX enforcement.**" *Id.* at 12.[8] In contrast, Doe's allegations of "pressure" here are temporally removed, do not specify how any "pressure" ties specifically to gender, and are not connected in any way to his own disciplinary proceeding.

*Investigator's background.* Doe's allegations regarding the Investigator's "advocacy" background also fail plausibly to demonstrate any alleged gender bias. Courts—including in the very cases on which Doe relies—have specifically considered and rejected gender bias claims based on such allegations of prior experience. As the Sixth Circuit has noted: "Merely being a feminist, being affiliated with a gender-studies program, or researching sexual assault ['from the perspective of protecting females from males'] does not support a reasonable inference tha[t] an individual is biased against men." *Miami Univ.*, 882 F.3d at 593 n.6.[9] Further, Doe's conclusory allegations that the Investigator was biased against males is contradicted by other facts he alleges, including that the same Investigator found H.S., another *male* student, "*not responsible*"

---

[8] Doe's mischaracterization and over-emphasis of *GWU I*—including his bold claim that "*none* of the allegations taken into account by Judge Collyer specifically concerned plaintiff's own disciplinary proceeding," Opp. at 25-26 (emphasis added), when the complainant in that plaintiff's proceeding was alleged to have pressured GWU herself—is especially surprising given his counsel's intimate familiarity with that case, as counsel of record.

[9] *See also Doe v. Loh*, 2018 WL 1535495, at *10 (D. Md. Mar. 29, 2018), *aff'd*, 767 F. App'x 489 (4th Cir. 2019) (unpublished) ("simply because [the Title IX Director], in the past, had taken up the cause of female victims does not render her hopelessly biased against men"); *Univ. of Colo., Boulder through Bd. of Regents of Univ. of Colo.*, 255 F. Supp. 3d at 1077-79 (no plausible inference of gender bias from allegation that the investigator's "career focus has been in the area of Women's Studies and victim advocacy," even when considered in conjunction with allegations of "pressure" including an open OCR investigation); *Messeri v. Univ. of Colo., Boulder*, 2019 WL 4597875, at *14-16 (D. Colo. Sept. 23, 2019) (similar even under a *minimally* plausible standard) (appeal filed).

for all charges and found Doe himself "not responsible" for two of the three charges.  It is also

significant that Doe had the opportunity to object to the Investigator on grounds of conflict of

interest (*see* Notice of Investigation, Mot. Ex. 2) but chose not to; nor did he raise any concerns

of *gender* bias during his Appeal (*see* Doe's Appeal, Mot. Ex. 6).

    *Procedural complaints.*  Finally, Doe's claims regarding purported "procedural

irregularities" fall far short of stating a claim of gender bias.  Opp. at 23-24.  The Complaint does

not provide a single *fact* to suggest that AU's weighing of the evidence or interpretation of its

Code and Policy was motivated by gender bias *at all*.  Given this, and "the absence of any

specific factual allegations pointing to [gender] bias on the part of the defendant[], it cannot be

said that the discriminatory motive explanation is plausible rather than just conceivable."  *Doe v.

Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 733 (E.D. Va. 2015).  Indeed,

the Seventh Circuit affirmed dismissal of a similar "erroneous outcome" claim, finding

allegations that the school had restricted the plaintiff's "access to documents relevant to the

investigation" and that the "decision was against the weight of the evidence" insufficient as they

were "divorced from gender" and, as here, "the documents attached to Doe's complaint d[id] not

imply the board blindly accepted Roe's allegations while finding Doe incredible[;] [r]ather, after

considering all of the evidence the hearing panel found some claims were substantiated and

others were not."  *Columbia Coll. Chi.*, 933 F.3d at 856.[10]  Dismissal is similarly warranted here.

    Doe cites a litany of cases supporting the unremarkable proposition that a court *could*

---

[10] *See also Cummins*, 662 F. App'x at 453 ("the[ ] deficiencies at most show a disciplinary
system that is biased in favor of alleged victims and against those accused of misconduct");
*Univ. of St. Thomas*, 240 F. Supp. 3d at 991 ("even if a university treated a female student more
favorably than the plaintiff, during the disciplinary process, 'the mere fact that plaintiff is male
and the alleged victim is female does not suggest that the disparate treatment was because of
plaintiff's sex'") (citations omitted); *Salau v. Denton*, 139 F. Supp. 3d 989, 999 (W.D. Mo.
2015) (same).

find actionable gender bias where *sufficient evidence* reflecting a plausible claim of bias exists. But those cases are not like this one.  Unlike here, plaintiffs in those cases made "particularized" allegations of significant procedural infirmities, patterns of decision-making at the school tied to gender, or evidence of pressure more *specific to the decision-makers* or *the disciplinary process at issue*.  *See, e.g.*, *Miami Univ.*, 882 F.3d at 593 (statistical evidence that school found responsible "every male student accused of sexual misconduct" across consecutive semesters, and nearly ninety percent found responsible across four years were male); *Doe v. Columbia Univ.*, 831 F.3d 46, 49-51 (2d Cir. 2016) (in the *weeks leading up* to the plaintiff's hearing, the Title IX investigator *herself* had faced substantial criticism); *Doe v. Ohio State Univ.*, 239 F. Supp. 3d 1048, 1073 (S.D. Ohio 2017) (enumerated 20 examples of university's alleged anti-male bias in sexual assault cases similar to his own); *Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 223 (D. Mass. 2017) (complainant's active involvement in student protests to compel expulsion of male student accused of sexual misconduct pressured college to "appease" complainant). Moreover, many of the cases on which Doe relies are cases from the Second Circuit, which, as discussed above, has adopted a lower pleading standard that is not applicable here.[11]

At bottom, Doe is dissatisfied with the outcome of AU's investigation, and seeks a judicial "do-over."  But Title IX does not provide a vehicle to relitigate an adverse outcome based simply on a disagreement with the University's findings.  Title IX "erroneous outcome" claims are a means to redress *gender bias*, not adverse outcomes, and Doe does not and cannot plausibly allege that such bias infected AU's investigation here.

---

[11] *See* Opp. at 17-24 (citing, *e.g.*, *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016), *Noakes v. Syracuse Univ.*, 369 F. Supp. 3d 397 (N.D.N.Y. 2019), *Doe v. Syracuse Univ.*, 341 F. Supp. 3d 125 (N.D.N.Y. 2018), *Rolph v. Hobart & William Smith Colls.*, 271 F. Supp. 3d 386 (W.D.N.Y. 2017)).

## II.     Doe's D.C. Human Rights Act Claims are Fatally Flawed.

Doe's disparate treatment claim under the D.C. Human Rights Act ("DCHRA") fails for the same reasons that his Title IX claim fails. *See* Section I *supra*. And Doe's Opposition does not address the deficiencies of his disparate impact claim. As explained in AU's Motion, Doe fails to allege, as is necessary for a disparate impact claim, that *non-males* go through the same disciplinary process and receive disproportionately more favorable outcomes than males. *See GWU I*, 366 F. Supp. 3d at 13-14. And the fact that the *only* point of comparison Doe presents at all is H.S.—a *male* respondent who was found "*not responsible*" for all of the applicable charges during a disciplinary proceeding that involved the same exact process and, indeed, investigator, as in Doe's disciplinary proceeding—wholly refutes Doe's claim that AU's policies and procedures have had a disparate impact on males. Doe has not pled facts that give rise to a "reasonable expectation that discovery will reveal" evidence of disproportionate impact based on sex. *Twombly*, 550 U.S. at 556. Accordingly, Doe's DCHRA claims should be dismissed.

## III.    Doe Fails to State Viable Contract Claims.

### A.     Doe has not alleged the breach of an enforceable contract.

Doe's contract claims fail as a matter of law because Doe has not adequately alleged any breaches of enforceable provisions of a contract. First, as demonstrated in AU's Motion and in its Opposition to Doe's Motion for Partial Summary Judgment filed herewith (AU's Opp.), Doe has not alleged facts sufficient to establish that the Code and Policy are enforceable contracts. AU's Opp. at 5-8. Importantly, the plain language of the Code and Policy belie any intent to be construed inflexibly as strictly enforceable contracts, subject to the rigid application of traditional legal contract principles, as commercial contracts would be. *See Pride v. Howard Univ.*, 384 A.2d 31, 35 (D.C. 1978) ("Contracts are written, and are to be read, by reference to the norms of conduct and expectations founded upon them. This is especially true of contracts in

and among a community of scholars, which is what a university is.  The readings of the market place are not invariably apt in this non-commercial context."); *Greene v. Howard Univ.*, 412 F.2d 1128, 1135 (D.C. Cir. 1969) (same).

Indeed, far from vesting any specific rights in students, the Code recognizes the University's need for flexibility in administering student disciplinary processes, granting it authority to "take all necessary and appropriate action to protect the safety and well-being of the campus community," and expressly reserving to the Board of Trustees the "right to review, and to take *any action* it deems necessary, *in any conduct case*."  Code at 4 (emphasis added); *see also* Code at 12 (noting that "deviations from prescribed procedures [will not] necessarily invalidate a decision" in some circumstances); Code at 4 (noting the University's unilateral right to amend the documents at any time).  And, even were this Court to view the Code and Policy as binding contracts, a deferential standard of judicial review would apply.  *See generally Chenari v. George Wash. Univ.*, 847 F.3d 740, 745 (D.C. Cir. 2017) (stating that "[a] university '[is] entitled to summary judgment [absent] evidence from which a fact finder could conclude that there was no rational basis for the decision or that it was motivated by bad faith or ill will'") (citation omitted); *Hajjar-Nejad v. George Wash. Univ.*, 37 F. Supp. 3d 90, 119 (D.D.C. 2014) (noting that deference to the university's interpretation of its regulation was appropriate).

Second, the alleged facts would not support a claim for breach in any event.  Many of the provisions on which Doe relies bespeak substantial discretion, consistent with D.C. law and that of other jurisdictions, as to how universities respond to claims of sexual misconduct on campus. The facts Doe alleges here demonstrate that AU satisfied its obligations in addressing the report

of his alleged sexual misconduct.[12]

**The Investigation.**  Doe's claims that AU failed to provide a "thorough and impartial investigation," that "afforded [ ] [him] the opportunity to present evidence," and then failed to apply the "preponderance standard," all rely on language in the Code or Policy reflecting a "high level of generality" that is patently insufficient to support a claim for breach of contract.  *See generally Doe v. Univ. of Chi.*, 2017 WL 818859, at *6 (N.D. Ill. Mar. 2, 2017) (holding that the university's rules contain "such a high level of generality that they do not contain concrete promises"); *Basch v. George Wash. Univ.*, 370 A.2d 1364, 1367 (D.C. 1977) ("An offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain.") (quoting *Restatement (First) of Contracts* § 32 (1932)).

As noted in AU's Motion, the Code and Policy give AU substantial discretion and latitude in conducting investigations, where "all parties [are afforded] notice and opportunity to present evidence."  Policy at 8.  The Complaint and the documents incorporated therein demonstrate that AU *did* give Doe notice (*see* Notice of Investigation (Mot. Ex. 2)), along with *multiple* opportunities to present evidence (*see* Report at 1-2).  And, with respect to Doe's claim that AU violated a "specific responsibility to disclose relevant information and evidence" from a *different* investigation, Doe fails to point to a single provision in the Code or Policy that compels this "responsibility," and, in fact, concedes the absence of such an affirmative obligation.  Opp. at 35-36.  Doe also simply ignores some of the provisions AU referenced reflecting its significant discretion in how it conducts an investigation.  *See* Mot. at 24.  While Doe tries to argue that a

---

[12] Doe's underlying argument that AU was *barred* from investigating the allegations against Doe at all is addressed in AU's Opposition to Doe's Motion for Partial Summary Judgment, filed concurrently.

Code provision expressly noting that the Investigator has "discretion" is limited to determining the relevance of "submitted" evidence, Doe misses the point. Opp. at 34. The Code provides that the Investigator "has the discretion to . . . *include or exclude* certain types of evidence," and discretion to make determinations regarding what types of evidence to consider would negate any contractual obligation to secure specific evidence (as Doe alleges). *See* Code at 18 (emphasis added).

      **Sanctioning Panel.** Doe's allegations fare no better with respect to the Sanctioning Panel. As Doe's Opposition and the Complaint admit, Doe was informed prior to the Sanctioning Panel meeting that his advisor would not be able to attend if Doe was submitting a written statement in lieu of attending via Skype or phone. Opp. at 38; Compl. ¶203. Doe decided to forgo attending the meeting via Skype or in-person (unlike Roe who participated via Skype) and thus his advisor was not permitted to attend given the advisor's limited role under the Code to "consultation" and the prohibition in the Policy on advisors "participat[ing] directly in any meeting." Code at 18 ("the role of an advisor is limited to consultation"); Policy at 8. Notably, Doe points to *no provision* in the Code or Policy allowing his advisor to attend the Sanctioning Panel meeting if Doe were not present. Similarly, with respect to challenging the Sanctioning Panel members for conflicts of interest, Doe does not allege that he ever sought to do so, much less that the University prohibited him from doing so—or even that a conflict existed. While Doe argues that he did not have an opportunity to challenge *at* the Sanctioning Panel meeting, he clearly acknowledges in his Opposition and Complaint that he was informed of the Sanctioning Panel process "weeks prior to the hearing" and has not alleged that he was prohibited from challenging the members of the Sanctioning Panel at that time or ever. Opp. at 38; Compl. ¶¶200-01.

**Doe's Appeal.**  Finally, as to the Appeal, Doe improperly amends his allegations of breach from being about whether the Appeals Panel provided "any meaningful explanation" for its decision (which is not required under the Code or Policy) to whether the Appeals Panel "exceeded its role" in determining "viability" and reached the "merits."  Opp. at 39-40; *see Briscoe*, 61 F. Supp. 3d at 83 n.2.  Regardless, Doe has not plausibly alleged that the Appeals Panel breached any provision of the Code or Policy by determining that Doe's appeal was "not viable."  *See* Appeal Decision Letter (Mot. Ex. 7).  And, Doe's reliance on *GWU II* is misplaced as the court's decision there was based on GWU's specific appellate procedures, which differ from AU's procedures.  Opp. at 39 (discussing *Doe v. George Wash. Univ.*, 321 F. Supp. 3d 118 (D.D.C. 2018) ("*GWU II*")).

Thus, even if the Code or Policy could be considered enforceable contracts, Doe has not alleged facts showing that AU failed to comply with their terms.

**B.     Doe fails to state a claim for breach of the implied covenant of good faith and fair dealing.**

Doe's claim for breach of the implied covenant of good faith and fair dealing likewise fails at the outset because there is no enforceable contract between AU and Doe.  *See* Mot. at 30-31; AU's Opp. at 5-8.  Further, try as he might, Doe cannot escape that his breach of the implied covenant of good faith and fair dealing claim is duplicative of his breach of contract claim and fails to plausibly allege the requisite "arbitrary and capricious" conduct.  The requested remedies for each claim are *identical* and Doe's allegations merely parrot obligations he alleges (incorrectly) are imposed by express contractual terms.[13]  Although Doe argues that he should be

---

[13] *See* Compl. ¶293 ("[B]y conducting an inadequate investigation of Ms. Roe's claims, failing to provide him with a Sanction [*sic*] Panel hearing that complied with the University's policies and procedures, and concluding through the Appellate Board that the threshold for an appeal had not been met, the University breached the covenant of good faith and fair dealing.").

able to plead "alternative theories of relief" (Opp. at 41, n.41), it is well-established under D.C. law that "breach of the implied covenant is not an independent cause of action when the allegations are identical to other claims for relief[.]"  *WMATA v. Quik Serve Foods, Inc.*, 2006 WL 1147933, at *5 (D.D.C. Apr. 28, 2006); *see also GWU I*, 366 F. Supp. 3d at 8.

Further, Doe has not come close to plausibly alleging that AU's actions were "arbitrary" or motivated by "bad faith" or "ill will" toward him.  *See Richter v. Catholic Univ. of Am.*, 2019 WL 481643, at *5 (D.D.C. Feb. 7, 2019).  Merely alleging "procedural irregularities" is not sufficient to allege that a student disciplinary decision was arbitrary and capricious.  *See generally Hajjar-Nejad*, 37 F. Supp. 3d at 119 ("the Court concludes that either there were no procedural irregularities here, or there were not the sort of procedural irregularities that would indicate an arbitrary decision").  Doe's conclusory arguments to the contrary are not sufficient to state a claim and must be dismissed.

## IV.    Doe Fails to State a Claim for Negligence.

Doe does not address at all the case law cited by AU in its Motion at 33, holding that no "special relationship" exists between a university and its students sufficient to impose a duty of care for purposes of a negligence claim.  Rather, Doe attempts to keep his negligence claim alive by arguing simply that discovery is needed.  But even the cases on which Doe relies support the fundamental principle that the key to imposing a duty is the relationship between the parties, not merely foreseeability.  *See Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793-94 (D.C. 2011) ("[T]he relationship between the parties is *the key* to determining whether the defendant had a legally enforceable duty to the plaintiff.") (citation omitted).

Doe argues that "private universities owe a clear duty to their students to exercise reasonable care when disciplining them."  Opp. at 42.  But Doe points to no authority under D.C.

law recognizing this "clear duty" because such authority is to the contrary. *See North v. Catholic Univ. of Am.*, 310 F. Supp. 3d 89, 96 (D.D.C. 2018) (refusing to recognize that a university had a common law "duty of basic fairness" with respect to how it conducted a student's sexual misconduct disciplinary hearing and noting that the student "cite[d] no authority to establish that this claim exists"). Doe argues that the decision in *North* is not relevant because the claim was not styled as a "negligence" claim. Opp. at 43. But no matter what words Doe chooses, he is alleging the same tort that the *North* court analyzed—that AU was not fair or reasonable in the way it conducted Doe's disciplinary proceeding—and a D.C. court has found no authority on which to recognize such a claim. Indeed, courts in other jurisdictions frequently have held that conducting disciplinary proceedings does *not* give rise to an enforceable legal duty. *See, e.g.*, *Marymount Univ.*, 297 F. Supp. 3d at 589 (refusing to recognize a university's "duty to exercise special care" or "duty to be fair" in conducting a student's disciplinary proceedings); *Doe v. Columbia Coll. Chi.*, 299 F. Supp. 3d 939, 963 (N.D. Ill. 2017), *aff'd*, 933 F.3d 849 (7th Cir. 2019) (college did not owe a duty to its students "relating to the implementation of student disciplinary proceedings"); *Amherst Coll.*, 238 F. Supp. 3d at 228 (same); *Austin v. Univ. of Or.*, 205 F. Supp. 3d 1214, 1229 (D. Or. 2016), *aff'd*, 925 F.3d 1133 (9th Cir. 2019) (no special relationship between university and students involved in a disciplinary process).

Doe's reliance on *Bradley v. National Collegiate Athletic Association*, 249 F. Supp. 3d 149, 180-81 (D.D.C. 2017) is misplaced. Opp. at 43. The negligence claim in *Bradley* involved physical injuries sustained by an athlete "during the course of an intercollegiate game . . . on the institution's campus," not her status as a student alone. 249 F. Supp. 3d at 180. And the court found the negligence claim could proceed at the motion to dismiss stage specifically because the athlete had reported her injuries to the school and the school thus may have owed her "a special

duty" to minimize the risk of future injuries. *Id.* That is not analogous to the facts alleged here, whereas the numerous cases finding universities owe no duty to students involved in disciplinary proceedings are directly comparable.

And even if a duty of care *had* existed, Doe's allegations do not sustain a claim that AU *breached* any duty in its conduct of the disciplinary proceedings. As discussed at length in AU's Motion and this Reply, Doe has failed to allege *specific, non-conclusory facts* that can reasonably be viewed as showing procedural impropriety sufficient to sustain a negligence claim. Doe simply rehashes the same points raised in his Title IX and breach of contract claims, which the Complaint's own facts demonstrate are insufficient to support a plausible inference of wrongdoing by AU under any theory.

Finally, Doe fails to articulate how his negligence claim is not duplicative of his breach of contract claim. Grasping at straws, Doe argues that at a minimum his allegations of "negligent training and supervision" and that AU employed a "biased" investigator are not duplicative and state a claim. Opp. at 45. But that argument fails for a number of reasons, including that (1) such allegations are conclusory and should be disregarded (*see Twombly*, 550 U.S. at 555); (2) those alleged acts are grounded in AU's policies and procedures, as the Complaint itself acknowledges (*see* Mot. at 35 (quoting Compl. ¶299)); and (3) Doe fails to address AU's cited authority that a claim for negligent supervision requires allegations that do not exist here. *See* Mot. at 34 (citing *Giles v. Shell Oil Corp.*, 498 A.2d 610, 613 (D.C. 1985)). Doe's negligence claim should be dismissed.

## <u>CONCLUSION</u>

For the reasons set forth herein and in the Motion, the Complaint should be dismissed with prejudice.

Dated: January 16, 2020

Respectfully submitted

*/s/ Laurel Pyke Malson*
Laurel Pyke Malson (#317776)
Aryeh S. Portnoy (#464507)
Amanda Shafer Berman (#497860)
Nathiya Nagendra (#1031055)

CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel:  (202) 624-2576
LMalson@crowell.com
APortnoy@crowell.com
ABerman@crowell.com
NNagendra@crowell.com


*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Reply in Support of Defendant's Motion to Dismiss the

Complaint was served today, January 16, 2020, on the following counsel of record for Plaintiff

via the Court's CM/ECF system:

**Scott Bernstein**
KaiserDillon PLLC
1099 14th Street, NW
8th Floor West
Washington, DC 20005
Email: sbernstein@kaiserdillon.com

/s/ *Laurel Pyke Malson*
Laurel Pyke Malson