**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JOHN DOE,<br><br>Plaintiff,<br>v.<br><br>AMERICAN UNIVERSITY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:19-cv-03097-APM |

**RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS FOR WHICH THERE IS NO DISPUTE**

Pursuant to Local Rule 7(h)(1) and this Court's Order dated December 6, 2019 (ECF No. 12), American University respectfully submits the following Response to Plaintiff's Statement of Material Facts for Which There is No Dispute in support of his Motion for Partial Summary Judgment ("Pl. SOF") (ECF No. 17).

1. *In August 2015, both John Doe and Jane Roe matriculated as freshman undergraduate students to American University ("AU").*

Admitted.

2. *On or about January 9, 2019, during Mr. Doe's and Ms. Roe's last semester at AU prior to their scheduled graduation, Ms. Roe brought a complaint of sexual misconduct against Mr. Doe.* See *ECF No. 13-1 at 1 (AU's Motion to Dismiss (hereinafter "Def.'s Mem."), Ex. 1).*

Denied. AU denies that the Spring 2019 semester was Mr. Doe's last semester at AU. Mr. Doe attended AU through the Summer 2019 semester. *See* Ex. 1, John Doe's Transcript. AU also denies that Ms. Roe brought a "complaint" on or about January 9, 2019. Rather, Ms.

Roe reported a sexual assault to AU through an investigatory interview process which began on or about January 9, 2019. *See* Ex. 2, Investigation Report. After receiving Ms. Roe's report, AU sent a Notice of Investigation on January 24, 2019, to both Mr. Doe and Ms. Roe stating that it was opening an investigation into a report that Mr. Doe may have engaged in conduct prohibited by the Student Conduct Code. *See* Ex. 3, Notice of Investigation.

3. *Ms. Roe's complaint alleged, inter alia, that Mr. Doe had sexually assaulted her during a social gathering at Mr. Doe's apartment during the evening of April 22, 2016, more than two-and-a-half years before she filed her complaint with the school. See id.*

Denied in part. As explained in its response to Pl. SOF ¶ 2, AU denies that Ms. Roe filed a complaint; rather, she reported a sexual assault through an investigatory interview process. AU admits that Ms. Roe reported that Mr. Doe had sexually assaulted her during a social gathering at Mr. Doe's apartment during the evening of April 22, 2016.

4. *At the time of the alleged incident, both Ms. Roe and Mr. Doe were freshman undergraduate students at AU.*

Admitted.

5. *At the time Ms. Roe brought her complaint against Mr. Doe, both of them were in their last semester of their senior year.*

Denied in part. As explained in its response to Pl. SOF ¶ 2, AU denies that Ms. Roe brought a "complaint." Rather, as discussed in response to Pl. SOF ¶ 2, she reported a sexual assault through an investigatory interview process, which AU was required to review by various obligations, including those under Title IX of the Education Amendments of 1972. AU further denies that Mr. Doe was in his last semester at AU when Ms. Roe reported a sexual assault to

AU. AU admits that Ms. Roe was in the last semester of her senior year when she reported a sexual assault to AU.

6. *On May 22, 2019, AU's Title IX investigator, Fariha Quasem, notified Mr. Doe that she had found him responsible for sexual assault of Ms. Roe. See Def.'s Mem. Ex. 4.*

Admitted.

7. *On July 1, 2019, AU's Dean of Students Jeffrey Brown notified Mr. Doe that he was being suspended from the university until December 31, 2020, and that this punishment would be permanently recorded on his academic transcript, as a result of the finding of responsibility. Dean Brown further notified Mr. Doe that he would be required to write a "reflection paper" regarding the alleged incident for which he was found responsible.*

Denied in part. AU admits that, on July 1, 2019, Dean Brown notified Mr. Doe of his suspension, the notation on his academic transcript, and his reflection paper assignment. AU denies this statement insofar as it limits the "reflection paper" assignment merely to the "alleged incident." Rather, the assignment contained four prompts asking Mr. Doe to reflect broadly on the decision-points throughout the incident, the choices he made, and how the incident and resulting investigation impacted him and his definition of consent. *See* Ex. 4, July 31, 2019 Email to John Doe. AU further clarifies that Mr. Doe was not "punished," but "sanctioned," according to the terms of the July 1, 2019 notice and July 31, 2019 Email.

8. *The AU Student Conduct Code (the "Code") is a disciplinary code governing all students of AU, including both Mr. Doe and Ms. Roe at the relevant times at issue in this case. See Ex. 1 (2015-16 Code), 2 (2016-17 Code), 3 (2017-18 Code) & 4 (2018-19) Code.*

Admitted. However, while AU is not specifically disputing Plaintiff's use of the word "governing," it does not admit any intent to be bound by the Codes or that the Code strictly

limits either the University or its students. Rather, all versions of the Code from 2015-16 through the present state in Section III ("Scope of Authority") that the Code "is the university's policy for nonacademic conduct offenses," and that document is better characterized as a set of guidelines, which must be read as a whole, including the provisions discussed below in AU's Statement of Material Facts for Which There is No Dispute.

9. *The AU Discrimination and Sexual Harassment Policy (the "Policy") is a university policy, amended from time to time, setting forth the school's policies and procedures for responding to and resolving reports of discrimination, including but not limited to sexual misconduct at the relevant times at issue in this case. See Ex. 5 & 6.*

Admitted. However, AU notes that the text of the Policy more precisely describes that document as establishing "roles and responsibilities and [a] complaint resolution process" in order "to assist the University in ensuring an educational environment and work place free from sexual harassment, discrimination, and discriminatory harassment." *E.g.*, 2015-16 Policy at IV ("Policy Process").

10. *When Mr. Doe and Ms. Roe matriculated to AU in the fall of 2015, and on the date of the alleged incident (April 22, 2016), Section XIII.B. of the Code in effect at those times provided in relevant part:*

> *A written complaint must be filed with the director of Student Conduct and Conflict Resolution Services within 15 days (excluding weekends, official university holidays, winter and spring breaks) of the occurrence or discovery of the alleged infraction(s).* The deadline for filing a case will be extended if there is an alleged violation of the university's Discrimination and Sexual Harassment Policy, Whistleblower Policy, or a Code violation involving sexual harassment, domestic violence, dating violence, rape, sexual assault, sexual exploitation, or stalking. In such cases, the complainant will have one year from the date of discovery to file a complaint as set forth in these policies. *Requests for extension of the 15 day or one year filing periods must be made in writing to the director of Student Conduct and Conflict Resolution Services or designee, and will be*

> *evaluated based on whether a reasonable person might be justified in filing after the deadline because of relevant circumstances.*

*Ex. 1 at 12 (emphasis in original).*

Denied in part. AU admits that the 2015-16 Code includes the language quoted by Plaintiff.[1] However, AU denies this statement insofar as it characterizes the Code as the *exclusive and inflexible* process for fulfilling the University's obligations under Title IX, or that the quoted language serves as a procedural bar to the University's ability to fulfill those obligations. AU's basis for this denial includes the cited language in its own Statement of Material Facts for Which There is No Dispute below.

11. *On the date of the alleged incident, Section IV.D. of AU's Discrimination and Sexual Harassment Policy ("August 2015 Policy"), under the heading "INITIATING A COMPLAINT," stated: "Notify the appropriate Responsible Official as quickly as possible of violations of this policy and within one (1) year of the alleged violation. Complaints filed after the (1) year period may be considered by the Responsible Official, when requested in writing and there are extenuating circumstances." Ex. 5 at 6.*

Denied in part. AU admits that the August 2015 Policy includes the language quoted by Plaintiff. However, AU denies this statement insofar as it characterizes the August 2015 Policy as the *exclusive and inflexible* process for fulfilling the University's obligations under Title IX, or that the quoted language serves as a procedural bar to the University's ability to fulfill those obligations. AU's basis for this denial includes the cited language in its own Statement of Material Facts for Which There is No Dispute.

---

[1] AU notes that the emphasis in the Code merely designates provisions applicable to Title IX proceedings. *See* Pl.'s Ex. 1 at 3 ("*Provisions afforded to parties involved in cases subject to Title IX and the Campus Sexual Violence Elimination Act are italicized in applicable sections and stated in summary below, in part B.*").

12. *Accordingly, under the Code and Policy in effect at the time of the alleged incident, Jane Doe had one year from April 22, 2016, to file any complaint regarding the alleged incident. One year (365 days) from April 22, 2016, is April 22, 2017.*

Denied in part. AU admits that one year from April 22, 2016, is April 22, 2017. AU denies the remainder of this statement because it asserts an incorrect legal conclusion (that Jane [R]oe was barred from reporting a sexual assault after one year had passed, or that AU was barred from investigating a report of sexual assault after one year from the assault had passed). AU's basis for this denial includes the language from the Code and Policy cited below in its own Statement of Material Facts for Which There is No Dispute, which makes clear that (1) there are circumstances in which victims may bring complaints more than a year after alleged assaults, and (2) AU independently has the authority to investigate and conduct disciplinary proceedings whenever it becomes aware of an allegation of sexual assault. AU's denial also is based on the requirements of Title IX—which are incorporated by reference into AU's Policy and Code—that AU review all reports of sexual misconduct about which it knows, or reasonably should know.

13. *One year after the date of the alleged incident, on April 22, 2017, the Code effective on that date contains a statement that is substantively identical to the language quoted above from the 2015-16 Code setting a one-year deadline from the date of discovery. Ex. 2 at 13.*

Denied in part. AU admits that the Code effective on April 22, 2017, contains substantively identical language to the previously quoted language from the 2015-16 Code. For the reasons explained in Pl. SOF ¶ 12, AU denies that the Code "set[ ] a one-year deadline," insofar as that characterization would prohibit Roe from reporting (or

even bringing a complaint regarding) a sexual assault or prohibit AU from investigating a sexual assault more than one year after it is alleged to have occurred.

14. *One year after the date of the alleged incident, on April 22, 2017, the August 2015 Policy containing the one-year deadline for complaints involving sexual misconduct was still in effect and remained in effect until it was further revised on August 31, 2017. See Ex. 6 at 10.*

Denied in part. AU admits that the Policy in effect on April 22, 2017, was the August 2015 Policy and that it remained in effect until it was further revised on August 31, 2017. For the reasons explained in Pl. SOF ¶ 12, AU denies that the August 2015 Policy contained a "one-year deadline for complaints involving sexual misconduct," such that the University would be barred from investigating reports of sexual misconduct alleged to have occurred more than one year prior to it coming to the school's attention.

15. *Accordingly, AU did not attempt to extend the time period in which to file a complaint involving sexual misconduct before the one-year period for Ms. Roe to file a complaint relating to events on April 22, 2016, had expired.*

Denied. For the reasons explained in Pl. SOF ¶ 12, AU denies this statement because it suggests that AU considered the one-year provision to be inflexible or absolute, and more, that AU was actually *barred* from reviewing a report of sexual misconduct that is alleged to have occurred more than one year prior to receiving such report, or that the time for such reports had "expired." Furthermore, there was no need for AU to extend the time period in which to file a complaint given that AU applies the procedures in effect at the time a report or complaint is made, *see* Affidavit of Regina Curran (Attach. A to Opposition to Motion for Partial Summary Judgment) ("Curran Aff.") ¶ 8, and the 2018-19 Code merely instructs students to file complaints

"as soon as possible" following the alleged discrimination or harassment. Pl. Ex. 4 at 18. Had AU believed that an extension was necessary, it would have given Ms. Roe the opportunity to seek an extension, and the University would have granted that request in light of the serious nature of the allegations and circumstances. Curran Aff. ¶ 9.

16. *In July 2017, AU amended and approved the Code applicable for the 2017-18 academic year. See Ex. 3 at 25. In the revised 2017-18 Code, AU created a separate set of rules governing discipline for violations of AU's Discrimination and Sexual Harassment Policy. See id. at 15-22. It removed the relevant language previously included in Section XIII.B., and instead stated in Section XIX.A.1.b. the following:*

> *Pursuant to the university's Discrimination and Sexual Harassment Policy, the deadline for filing a case for investigation is one (1) year from the date of the alleged violation. Requests for extension of the one (1) year filing period must be made in writing to the Title IX Program Officer or their designee, and the Title IX Program Officer or designee may extend this time frame for good cause.*

*Ex. 3 at 16.*

Denied in part. AU admits that the 2017-2018 Code removed certain language previously included in Section XIII.B and added Section XIX.A.1.b. AU denies that it "created a separate set of rules" insofar as such statement suggests that AU established a new or different process for addressing alleged sexual assaults from its prior interpretation or practice under the earlier versions of the Code, as opposed to providing greater clarity and direction, in particular with respect to the one-year provision on which Doe relies.

17. *Ms. Roe has never requested an extension of the deadline to file her complaint, in writing or otherwise, and AU has never granted her such an extension.*

Denied in part. AU admits that it never granted a formal "extension" to Ms. Roe. For the reasons explained in response to Pl. SOF ¶ 2, AU denies this statement insofar that it alleges the

existence of a "deadline to file her complaint," and alleges that Ms. Roe "filed [a] complaint." Furthermore, there was no need for Ms. Roe to request, or AU to grant, an extension of the time in which to file a complaint given that AU applies the procedures in effect at the time a report or complaint is received, *see* Curran Aff. ¶ 8, and the 2018-19 Code only instructs students to file "as soon as possible" following the alleged discrimination or harassment. Pl. Ex. 4 at 18. Had AU believed that an extension was necessary, it would have given Ms. Roe the opportunity to seek an extension, and the University would have granted that request in light of the serious nature of the allegations and circumstances. Curran Aff. ¶ 9.

18. *In July 2018, AU further amended the Student Conduct Code. See Ex. 4 at 27. Section XIX.A.1.b. of 2017-18 Code was amended to state:*

> *Pursuant to the university's Discrimination and Sexual Harassment Policy, complainants should file a formal complaint as soon as possible following the alleged discrimination. Timely complaint filing gives the University the best chan[c]e to resolve the complaint. If respondent is no longer a student at the time of the formal complaint, the university may not be able to take disciplinary action against respondent, but it will still seek to provide support for complainant and take steps to end the alleged Prohibited Conduct, prevent its recurrence, and address its effects.*

*Ex. 4 at 18.*

Admitted.

19. *There is no language in the 2018-2019 Code stating that the amendment to Section XIX.A.1.b. would have retroactive effect or otherwise apply to complaints that had not yet been filed regarding incidents for which the prior one-year deadline had already passed prior to this amendment.*

Denied in part. AU admits that there is no specific language in the Code about the amendment having "retroactive" effect. AU denies, however, that revised Section XIX.A.1.b. would not apply to complaints or reports of misconduct brought after it became effective, but

concerning conduct that occurred prior. For the reasons explained in Pl. SOF ¶ 12, AU further denies that its prior Codes and Policies contained a "one-year deadline" for it to begin investigating and responding to information that it received regarding an incident of sexual misconduct. AU's basis for this denial includes the cited language in its own Statement of Material Facts for Which There is No Dispute below.

20. *AU further amended the Policy on August 31, 2017, which was in effect during the 2018-19 academic year. See Ex. 6 at 10. This amended Policy stated in relevant part:*

> *A complaint should be filed as soon as possible following the alleged discrimination. Timely complaint filing gives the University the best chance to resolve the problem. A delay in filing a complaint may severely limit available remedies. If the respondent is no longer affiliated with the University (e.g., former student or former employee), the University will take appropriate action within its authority, including referring the Complainant to external reporting options.*

*Ex. 6 at 7-8.*

Admitted.

**DEFENDANT'S STATEMENT OF MATERIAL FACTS FOR WHICH THERE IS NO DISPUTE IN SUPPORT OF ITS OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Local Rule 7(h)(1) and this Court's Order dated December 6, 2019 (ECF No. 12), American University respectfully submits the following Statement of Material Facts For Which There is No Dispute in support of its Opposition to Plaintiff's Motion for Partial Summary Judgment.[2]

1. Title IX of the Education Amendments of 1972 and its implementing regulations require educational institutions that receive federal funds, including AU, to take "prompt and effective action calculated to end [ ] [sexual] harassment [of which it becomes aware], prevent its recurrence, and, as appropriate, remedy its effects." U.S. Dep't of Educ., Office of Civil Rights, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties*, iii, (Jan. 2001) (notice published at 66 Fed. Reg. 5512-01 (Jan. 19, 2001)), *available at* https://www2.ed.gov/about/offices/list/ocr/docs/shguide.pdf.

2. In 2017, the Department of Education further confirmed: "[w]hether or not a student files a complaint . . . or otherwise asks the school to take action, where the school knows or reasonably should know of an incident of sexual misconduct, the school must take steps to understand what occurred and to respond appropriately." U.S. Dep't of Educ., Office of Civil Rights, *Q&A on Campus Sexual Misconduct*, 1 (Sept. 2017), *available at* https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf.

---

[2] Many of these undisputed facts, which primarily consist of quotations from the Code, Policy, or federal law, are also relevant to AU's pending Motion to Dismiss, particularly given that Plaintiff raised the issue—in both his Opposition to the Motion to Dismiss and in his Motion for Partial Summary Judgment—of whether the University is contractually barred from investigating and addressing Roe's allegations of sexual assault because they were reported more than a year after the incident.

3. Section I of AU's Discrimination and Sexual Harassment Policy in place during the 2015-16 academic year (the "2015-16 Policy"), under the heading "SCOPE," states: "The policy is intended to be consistent with the provisions of applicable local and federal laws and regulations." Pl.'s Ex. 5 at 1. Section I of the policy in place during the 2018-19 academic year (the "Amended Policy"), described in Plaintiff's SOF ¶ 20, contains substantively identical language. Pl.'s Ex. 6 at 1-2 ("This policy is intended to be consistent with applicable local and federal laws and regulations.").

4. Section I of the 2015-16 Policy, under the heading "SCOPE," states: "When several processes/procedures may be applicable in resolving a discrimination complaint, the responsible Title IX Officer will determine which resolution process and procedures will be used for the complaint. This is to avoid confusion about parties/facts/procedures, and to prevent duplication of resolution efforts." Pl.'s Ex. 5 at 2. The Amended Policy contains substantively identical language. Pl.'s Ex. 6 at 1-2 (changing "responsible Title IX Officer" to "Designated Official (See Section IV (E) below for contact information)").

5. Section II of both the 2015-16 Policy and the Amended Policy, under the heading "POLICY STATEMENT," states: "The University will respond promptly and effectively to *reports* of discrimination and will take appropriate action to prevent, to correct, and if necessary, to discipline individuals who violate this policy." Pl.'s Ex. 5 at 2 (emphasis added).

6. Section IV of the 2015-16 Policy, under the heading "POLICY PROCESS," states: "The following roles and responsibilities and complaint resolution process is established to assist the University in ensuring an educational environment and work place free from sexual harassment, discrimination, and discriminatory harassment." Pl.'s Ex. 5 at 4. The Amended Policy contains substantively identical language. Pl.'s Ex. 6 at 5 (making stylistic changes).

7. The "Statement of Common Purpose" in the 2015-16 Code states that it is "designed to benefit the American University community and to assist in forming the highest standards of ethics and morals among its members." Pl.'s Ex. 1 at 1.

8. The "Preamble" in the 2016-17 Code, the 2017-18 Code, and the 2018-19 Code states that it is "designed to support a safe, honest, and inclusive community with a shared commitment to acting with mutual respect and forming the highest standards of ethics and morals among its members." Pl.'s Ex. 2 at 2; Pl.'s Ex. 3 at 2; Pl.'s Ex. 4 at 3.

9. Section I of the 2015-16 Code, the 2016-17 Code, the 2017-18 Code, and the 2018-19 Code, under the heading "Authority for Student Discipline," states: "Ultimate authority for all university policy is vested in the Board of Trustees of American University. Non-academic disciplinary authority has been delegated by the president to the vice president of Campus Life to implement student conduct policies and take all necessary and appropriate action to protect the safety and well-being of the campus community." Pl.'s Ex. 1 at 2; Pl.'s Ex. 2 at 3; Pl.'s Ex. 3 at 3; Pl.'s Ex. 4 at 4.

10. Section I of the 2015-16 Code, the 2016-17 Code, the 2017-18 Code, and the 2018-19 Code, under the heading "Authority for Student Discipline," states: "The Board of Trustees reserves the right to review, and to take any action it deems necessary, in any conduct case." Pl.'s Ex. 1 at 2; Pl.'s Ex. 2 at 3; Pl.'s Ex. 3 at 3; Pl.'s Ex. 4 at 4.

11. Section I of the 2015-16 Code, the 2016-17 Code, the 2017-18 Code, and the 2018-19 Code, under the heading "Authority for Student Discipline," states: "The university reserves the right to amend this Student Conduct Code at any time according to established procedures." Pl.'s Ex. 1 at 2; Pl.'s Ex. 2 at 3; Pl.'s Ex. 3 at 3; Pl.'s Ex. 4 at 4.

12. Section II of the 2015-16 Code and the 2016-17 Code, under the heading "Responsibilities and Rights," states: "The university's Discrimination and Sexual Harassment Policy provides the complaint resolution process to assist the university in ensuring an educational environment and work place free from sexual harassment, discrimination, and discriminatory harassment." Pl.'s Ex. 1 at 3; Pl.'s Ex. 2 at 4.

13. Section VI of the 2015-16 Code, the 2016-17 Code, the 2017-18 Code, and the 2018-19 Code, under the heading "Prohibited Conduct," states: "This Code is not written with the specificity of a criminal statute, nor is it intended to cover every instance of potentially prohibited conduct." Pl.'s Ex. 1 at 7; Pl.'s Ex. 2 at 8; Pl.'s Ex. 3 at 6; Pl.'s Ex. 4 at 8.

14. Section XII of the 2015-16 Code, the 2016-17 Code, the 2017-18 Code, and the 2018-19 Code, under the heading "Standards of Due Process," states: "Formal rules of evidence will not be applied, nor will deviations from prescribed procedures necessarily invalidate a decision unless significant prejudice to the parties involved or the university result." Pl.'s Ex. 1 at 11; Pl.'s Ex. 2 at 12; Pl.'s Ex. 3 at 10; Pl.'s Ex. 4 at 12.

15. During all times that AU's Title IX Program Officer has been employed at AU (from April 2012 to mid-July 2015, and then from May 2017 to the present), *i.e.*, under both the current and earlier versions of the Code, AU has never declined to investigate a complaint or report (whether oral or written) of sexual assault on the ground that such complaint or report was untimely. Curran Aff. ¶ 6.

16. Prior to 2018, AU investigated complaints of sexual misconduct that were alleged to have occurred more than one year prior to the incident having been reported to the Title IX Program Office. Curran Aff. ¶ 7.

17. During all times that AU's Title IX Program Officer has been employed at AU, AU has applied the procedures in the University Student Code of Conduct and AU's Discrimination and Sexual Harassment Policy in effect at the time the complaint or report was received to proceedings involving allegations of sexual misconduct. Curran Aff. ¶ 8.

18. According to AU's Title IX Program Officer, had the University believed that a one-year limitation provision applied to Roe's report in this case against Doe, AU would have given Roe the opportunity to seek an extension of time to bring a complaint, and would have granted such an extension given the serious nature of the conduct alleged and the circumstances. Curran Aff. ¶ 9.