**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JOHN DOE, Plaintiff, | ) | Civil Action No. 1:19-cv-03097-APM |
| v. | ) | |
| AMERICAN UNIVERSITY, Defendant. | ) | |

**OBJECTIONS TO DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS FOR WHICH THERE IS NO DISPUTE AND RESPONSES AND PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT'S STATEMENT OF MATERIAL FACTS FOR WHICH THERE IS NO DISPUTE**

Pursuant to Local Rule 7(h)(1) and this Court's Order dated December 6, 2019 (ECF No. 12), American University respectfully submits the following (1) Objections to Defendant's Response to Plaintiff's Statement of Material Facts for Which There is No Dispute and (2) Responses and Objections to Plaintiff's Statement of Material Facts for Which There is No Dispute (ECF No. 17).

**Objections to Defendant's Response to Plaintiff's Statement of Material Facts for Which There Is No Dispute**

Before responding to Defendant's Statement of Material Facts for Which There Is No Dispute, included further below, Mr. Doe must first object to several responses Defendant has proffered in response to Mr. Doe's Statement of Material Facts for Which There is No Dispute. For ease of reference, Mr. Doe repeats only those statemnts and Defendant's responses thereto

to which Mr. Doe objects. Mr. Doe asserts that none of Ms. Roe's responses demonstrate a dispute regarding a fact that is material to Mr. Doe's motion for partial summary judgment.[1]

*5. At the time Ms. Roe brought her complaint against Mr. Doe, both of them were in their last semester of their senior year.*

AU'S RESPONSE: Denied in part. As explained in its response to Pl. SOF ¶ 2, AU denies that Ms. Roe brought a "complaint." Rather, as discussed in response to Pl. SOF ¶ 2, she reported a sexual assault through an investigatory interview process, which AU was required to review by various obligations, including those under Title IX of the Education Amendments of 1972. AU further denies that Mr. Doe was in his last semester at AU when Ms. Roe reported a sexual assault to AU. AU admits that Ms. Roe was in the last semester of her senior year when she reported a sexual assault to AU.

MR. DOE'S OBJECTIONS: Mr. Doe objects to AU's response to the extent it is making a legal argument regarding the requirements and obligations of Title IX.

*8. The AU Student Conduct Code (the "Code") is a disciplinary code governing all students of AU, including both Mr. Doe and Ms. Roe at the relevant times at issue in this case. See Ex. 1 (2015-16 Code), 2 (2016-17 Code), 3 (2017-18 Code) & 4 (2018-19) Code.*

AU'S RESPONSE: Admitted. However, while AU is not specifically disputing Plaintiff's use of the word "governing," it does not admit any intent to be bound by the Codes or that the Code strictly limits either the University or its students. Rather, all versions of the Code from 2015-16 through the present state in Section III ("Scope of Authority") that the Code "is the university's policy for nonacademic conduct offenses," and that document is better characterized as a set of guidelines, which must be read as a whole, including the provisions discussed below

[1] By providing these objections, Mr. Doe does not admit any factual assertions made within AU's responses by failing to responding further to the factual assertions themselves.

in AU's Statement of Material Facts for Which There is No Dispute.

MR. DOE'S OBJECTIONS: Mr. Doe objects to AU's response to the extent it contains legal argument regarding whether or not the Code is contractually binding.

*9. The AU Discrimination and Sexual Harassment Policy (the "Policy") is a university policy, amended from time to time, setting forth the school's policies and procedures for responding to and resolving reports of discrimination, including but not limited to sexual misconduct at the relevant times at issue in this case. See Ex. 5 & 6.*

AU'S RESPONSE: Admitted. However, AU notes that the text of the Policy more precisely describes that document as establishing "roles and responsibilities and [a] complaint resolution process" in order "to assist the University in ensuring an educational environment and work place free from sexual harassment, discrimination, and discriminatory harassment." *E.g.*, 2015-16 Policy at IV ("Policy Process").

MR. DOE'S OBJECTIONS: Mr. Doe objects to AU's response to the extent it contains legal argument regarding how the document should be characterized.

*10. When Mr. Doe and Ms. Roe matriculated to AU in the fall of 2015, and on the date of the alleged incident (April 22, 2016), Section XIII.B. of the Code in effect at those times provided in relevant part:*

> *A written complaint must be filed with the director of Student Conduct and Conflict Resolution Services within 15 days (excluding weekends, official university holidays, winter and spring breaks) of the occurrence or discovery of the alleged infraction(s).* The deadline for filing a case will be extended if there is an alleged violation of the university's Discrimination and Sexual Harassment Policy, Whistleblower Policy, or a Code violation involving sexual harassment, domestic violence, dating violence, rape, sexual assault, sexual exploitation, or stalking. In such cases, the complainant will have one year from the date of discovery to file a complaint as set forth in these policies. *Requests for extension of the 15 day or one year filing periods must be made in writing to the director of Student Conduct and Conflict Resolution Services or*

> *designee, and will be evaluated based on whether a reasonable person might be justified in filing after the deadline because of relevant circumstances.*

*Ex. 1 at 12 (emphasis in original).*

AU'S RESPONSE: Denied in part. AU admits that the 2015-16 Code includes the language quoted by Plaintiff.[1] However, AU denies this statement insofar as it characterizes the Code as the *exclusive and inflexible* process for fulfilling the University's obligations under Title IX, or that the quoted language serves as a procedural bar to the University's ability to fulfill those obligations. AU's basis for this denial includes the cited language in its own Statement of Material Facts for Which There is No Dispute below.

MR. DOE'S OBJECTIONS: Mr. Doe objects to AU's response to the extent it contains legal argument regarding whether or not the Code is contractually binding.

*11. On the date of the alleged incident, Section IV.D. of AU's Discrimination and Sexual Harassment Policy ("August 2015 Policy"), under the heading "INITIATING A COMPLAINT," stated: "Notify the appropriate Responsible Official as quickly as possible of violations of this policy and within one (1) year of the alleged violation. Complaints filed after the (1) year period may be considered by the Responsible Official, when requested in writing and there are extenuating circumstances." Ex. 5 at 6.*

AU'S RESPONSE: Denied in part. AU admits that the August 2015 Policy includes the language quoted by Plaintiff. However, AU denies this statement insofar as it characterizes the August 2015 Policy as the *exclusive and inflexible* process for fulfilling the University's obligations under Title IX, or that the quoted language serves as a procedural bar to the University's ability to fulfill those obligations. AU's

basis for this denial includes the cited language in its own Statement of Material Facts for Which There is No Dispute.

MR. DOE'S OBJECTIONS: Mr. Doe objects to AU's response to the extent it contains legal argument regarding whether or not the Code is contractually binding.

*12. Accordingly, under the Code and Policy in effect at the time of the alleged incident, Jane Doe had one year from April 22, 2016, to file any complaint regarding the alleged incident. One year (365 days) from April 22, 2016, is April 22, 2017.*

Denied in part. AU admits that one year from April 22, 2016, is April 22, 2017. AU denies the remainder of this statement because it asserts an incorrect legal conclusion (that Jane [R]oe was barred from reporting a sexual assault after one year had passed, or that AU was barred from investigating a report of sexual assault after one year from the assault had passed). AU's basis for this denial includes the language from the Code and Policy cited below in its own Statement of Material Facts for Which There is No Dispute, which makes clear that (1) there are circumstances in which victims may bring complaints more than a year after alleged assaults, and (2) AU independently has the authority to investigate and conduct disciplinary proceedings whenever it becomes aware of an allegation of sexual assault. AU's denial also is based on the requirements of Title IX—which are incorporated by reference into AU's Policy and Code—that AU review all reports of sexual misconduct about which it knows, or reasonably should know.

MR. DOE'S OBJECTIONS: Mr. Doe objects to AU's response to the extent it contains legal argument regarding whether or not "AU independently has the authority to investigate and conduct disciplinary proceedings whenever it becomes aware of an

allegation of sexual assault" and the requirements of Title IX and whether such requirements are incorporated by into AU's Policy and Code. Mr. Doe further objects to AU's response to the extent that it represents without support that "there are circumstances in which victims may bring complaints more than a year after alleged assaults."

*15. Accordingly, AU did not attempt to extend the time period in which to file a complaint involving sexual misconduct before the one-year period for Ms. Roe to file a complaint relating to events on April 22, 2016, had expired.*

<u>AU'S RESPONSE</u>: Denied. For the reasons explained in Pl. SOF ¶ 12, AU denies this statement because it suggests that AU considered the one-year provision to be inflexible or absolute, and more, that AU was actually *barred* from reviewing a report of sexual misconduct that is alleged to have occurred more than one year prior to receiving such report, or that the time for such reports had "expired." Furthermore, there was no need for AU to extend the time period in which to file a complaint given that AU applies the procedures in effect at the time a report or complaint is made, *see* Affidavit of Regina Curran (Attach. A to Opposition to Motion for Partial Summary Judgment) ("Curran Aff.") ¶ 8, and the 2018-19 Code merely instructs students to file complaints "as soon as possible" following the alleged discrimination or harassment. Pl. Ex. 4 at 18. Had AU believed that an extension was necessary, it would have given Ms. Roe the opportunity to seek an extension, and the University would have granted that request in light of the serious nature of the allegations and circumstances. Curran Aff. ¶ 9.

<u>MR. DOE'S OBJECTIONS</u>: Mr. Doe objects to AU's response to the extent it contains legal argument regarding whether or not the Code is contractually binding and whether there was a need to extend the time limit as stated in the 2015-16 Policy. Mr. Doe further objects to

the factual assertions made based on the Affidavit of Regina Curran and incorporates his objections to that affidavit, filed herewith.

*16. In July 2017, AU amended and approved the Code applicable for the 2017-18 academic year. See Ex. 3 at 25. In the revised 2017-18 Code, AU created a separate set of rules governing discipline for violations of AU's Discrimination and Sexual Harassment Policy. See id. at 15-22. It removed the relevant language previously included in Section XIII.B., and instead stated in Section XIX.A.1.b. the following:*

> *Pursuant to the university's Discrimination and Sexual Harassment Policy, the deadline for filing a case for investigation is one (1) year from the date of the alleged violation. Requests for extension of the one (1) year filing period must be made in writing to the Title IX Program Officer or their designee, and the Title IX Program Officer or designee may extend this time frame for good cause.*

*Ex. 3 at 16.*

<u>AU'S RESPONSE</u>: Denied in part. AU admits that the 2017-2018 Code removed certain language previously included in Section XIII.B and added Section XIX.A.1.b. AU denies that it "created a separate set of rules" insofar as such statement suggests that AU established a new or different process for addressing alleged sexual assaults from its prior interpretation or practice under the earlier versions of the Code, as opposed to providing greater clarity and direction, in particular with respect to the one-year provision on which Doe relies.

<u>MR. DOE'S OBJECTIONS</u>: Mr. Doe objects to the extent that AU's response contains a legal argument that AU's amendments to the one-year provision merely "provid[ed] greater clarity and direction."

*17. Ms. Roe has never requested an extension of the deadline to file her complaint, in writing or otherwise, and AU has never granted her such an extension.*

AU'S RESPONSE: Denied in part. AU admits that it never granted a formal "extension" to Ms. Roe. For the reasons explained in response to Pl. SOF ¶ 2, AU denies this statement insofar that it alleges the existence of a "deadline to file her complaint," and alleges that Ms. Roe "filed [a] complaint." Furthermore, there was no need for Ms. Roe to request, or AU to grant, an extension of the time in which to file a complaint given that AU applies the procedures in effect at the time a report or complaint is received, *see* Curran Aff. ¶ 8, and the 2018-19 Code only instructs students to file "as soon as possible" following the alleged discrimination or harassment. Pl. Ex. 4 at 18. Had AU believed that an extension was necessary, it would have given Ms. Roe the opportunity to seek an extension, and the University would have granted that request in light of the serious nature of the allegations and circumstances. Curran Aff. ¶ 9.

MR. DOE'S OBJECTIONS: Mr. Doe objects to AU's response to the extent it contains legal argument regarding whether a request for extension of time was needed. Mr. Doe further objects to the factual assertions made based on the Affidavit of Regina Curran and incorporates his objections to that affidavit, filed herewith.

**John Doe's Response to Defendant's Statement of Material Facts for Which There Is Allegedly No Dispute**

Pursuant to Local Rule 7(h)(1) and this Court's Order dated December 6, 2019 (ECF No. Mr. Doe respectfully submits the following Responses and Objections to AU's Statement of Material Facts For Which There is Allegedly No Dispute. AU's proffered statements are in italics. Mr. Doe's responses and objections are included after each statement in plain text.

1. *Title IX of the Education Amendments of 1972 and its implementing regulations require educational institutions that receive federal funds, including AU, to take "prompt and effective action calculated to end [ ] [sexual] harassment [of which it becomes aware], prevent its recurrence, and, as appropriate, remedy its effects." U.S. Dep't of Educ., Office of Civil Rights,* Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, *iii, (Jan. 2001) (notice published at 66 Fed. Reg. 5512-01 (Jan. 19, 2001)),* available at *https://www2.ed.gov/about/offices/list/ocr/docs/shguide.pdf*.

Denied. Mr. Doe objects to this statement as it is a legal conclusion concerning the purported requirements of Title IX and its implementing regulations, not a fact, and contains no language from the Title IX statute or the implementing regulations. Mr. Doe also denies this legal conclusion to the extent it asserts that Title IX of the Education Amendments of 1972 requires AU to undertake the actions so stated or purports to characterize the contents of Title IX or the implementing regulations as accurately reflected by the quoted language from the cited document.

Mr. Doe also denies the statement to the extent that it infers that the Revised Sexual Harrassment Guidance document cited therein is an "implementing regulation" or accurately

describes the implementing regulations or Title IX. Mr. Doe also denies the statement to the extent it represents that the cited document states that AU is "required" to take the actions stated. The actual text of the document merely identifies as "[a] critical issue . . . whether the school recognized that sexual harassment has occurred and took prompt and effective action calculated to end the harassment, prevent its recurrence, and, as appropriate, remedy its effects."

2. *In 2017, the Department of Education further confirmed: "[w]hether or not a student files a complaint . . . or otherwise asks the school to take action, where the school knows or reasonably should know of an incident of sexual misconduct, the school must take steps to understand what occurred and to respond appropriately." U.S. Dep't of Educ., Office of Civil Rights,* Q&A on Campus Sexual Misconduct, *1 (Sept. 2017),* available at *https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf.*

Denied in part. Mr. Doe admits that the cited document contains the quoted language to the extent it has not been altered by AU. Mr. Doe objects to the the statement as containing an improper legal conclusion regarding Title IX's requirements and denies it to the extent it infers that Title IX or its implementing regulations require AU to undertake the actions so stated. *See id.* at 1 (describing the Q&A and the 2001 Guidance as "interim" "information about how OCR will assess a school's compliance with Title IX."

3. *Section I of AU's Discrimination and Sexual Harassment Policy in place during the 2015-16 academic year (the "2015-16 Policy"), under the heading "SCOPE," states: "The policy is intended to be consistent with the provisions of applicable local and federal laws and regulations." Pl.'s Ex. 5 at 1. Section I of the policy in place during the 2018-19 academic year (the "Amended Policy"), described in Plaintiff's SOF ¶ 20, contains substantively identical language. Pl.'s Ex. 6 at 1-2 ("This policy is intended to be consistent*

*with applicable local and federal laws and regulations.").*

Admitted.

*4. Section I of the 2015-16 Policy, under the heading "SCOPE," states: "When several processes/procedures may be applicable in resolving a discrimination complaint, the responsible Title IX Officer will determine which resolution process and procedures will be used for the complaint. This is to avoid confusion about parties/facts/procedures, and to prevent duplication of resolution efforts." Pl.'s Ex. 5 at 2. The Amended Policy contains substantively identical language. Pl.'s Ex. 6 at 1-2 (changing "responsible Title IX Officer" to "Designated Official (See Section IV (E) below for contact information)").*

Admitted.

5. *Section II of both the 2015-16 Policy and the Amended Policy, under the heading "POLICY STATEMENT," states: "The University will respond promptly and effectively to* reports *of discrimination and will take appropriate action to prevent, to correct, and if necessary, to discipline individuals who violate this policy." Pl.'s Ex. 5 at 2 (emphasis added).*

Admitted in part. The word "reports" is not italicized in the the Policies.

*6. Section IV of the 2015-16 Policy, under the heading "POLICY PROCESS," states: "The following roles and responsibilities and complaint resolution process is established to assist the University in ensuring an educational environment and work place free from sexual harassment, discrimination, and discriminatory harassment." Pl.'s Ex. 5 at 4. The Amended Policy contains substantively identical language. Pl.'s Ex. 6 at 5 (making stylistic changes).*

Admitted in part. The heading for this passage in the Amended Policy is "Policy

Process & Reporting." *Id.*

*7. The "Statement of Common Purpose" in the 2015-16 Code states that it is "designed to benefit the American University community and to assist in forming the highest standards of ethics and morals among its members." Pl.'s Ex. 1 at 1.*

Admitted in part. To clarify, the quoted language is not the complete Statement of Common Purpose.

*8. The "Preamble" in the 2016-17 Code, the 2017-18 Code, and the 2018-19 Code states that it is "designed to support a safe, honest, and inclusive community with a shared commitment to acting with mutual respect and forming the highest standards of ethics and morals among its members." Pl.'s Ex. 2 at 2; Pl.'s Ex. 3 at 2; Pl.'s Ex. 4 at 3.*

Admitted.

*9. Section I of the 2015-16 Code, the 2016-17 Code, the 2017-18 Code, and the 2018-19 Code, under the heading "Authority for Student Discipline," states: "Ultimate authority for all university policy is vested in the Board of Trustees of American University. Non- academic disciplinary authority has been delegated by the president to the vice president of Campus Life to implement student conduct policies and take all necessary and appropriate action to protect the safety and well-being of the campus community." Pl.'s Ex. 1 at 2; Pl.'s Ex. 2 at 3; Pl.'s Ex. 3 at 3; Pl.'s Ex. 4 at 4.*

Admitted.

*10. Section I of the 2015-16 Code, the 2016-17 Code, the 2017-18 Code, and the 2018-19 Code, under the heading "Authority for Student Discipline," states: "The Board of Trustees reserves the right to review, and to take any action it deems necessary, in any conduct case." Pl.'s Ex. 1 at 2; Pl.'s Ex. 2 at 3; Pl.'s Ex. 3 at 3; Pl.'s Ex. 4 at 4.*

Admitted.

*11. Section I of the 2015-16 Code, the 2016-17 Code, the 2017-18 Code, and the 2018-19 Code, under the heading "Authority for Student Discipline," states: "The university reserves the right to amend this Student Conduct Code at any time according to established procedures." Pl.'s Ex. 1 at 2; Pl.'s Ex. 2 at 3; Pl.'s Ex. 3 at 3; Pl.'s Ex. 4 at 4.*

Admitted.

*12. Section II of the 2015-16 Code and the 2016-17 Code, under the heading "Responsibilities and Rights," states: "The university's Discrimination and Sexual Harassment Policy provides the complaint resolution process to assist the university in ensuring an educational environment and work place free from sexual harassment, discrimination, and discriminatory harassment." Pl.'s Ex. 1 at 3; Pl.'s Ex. 2 at 4.*

Admitted.

*13. Section VI of the 2015-16 Code, the 2016-17 Code, the 2017-18 Code, and the 2018-19 Code, under the heading "Prohibited Conduct," states: "This Code is not written with the specificity of a criminal statute, nor is it intended to cover every instance of potentially prohibited conduct." Pl.'s Ex. 1 at 7; Pl.'s Ex. 2 at 8; Pl.'s Ex. 3 at 6; Pl.'s Ex. 4 at 8.*

Admitted.

*14. Section XII of the 2015-16 Code, the 2016-17 Code, the 2017-18 Code, and the 2018-19 Code, under the heading "Standards of Due Process," states: "Formal rules of evidence will not be applied, nor will deviations from prescribed procedures necessarily invalidate a decision unless significant prejudice to the parties involved or the university result." Pl.'s Ex. 1 at 11; Pl.'s Ex. 2 at 12; Pl.'s Ex. 3 at 10; Pl.'s Ex. 4 at 12.*

Admitted.

15. *During all times that AU's Title IX Program Officer has been employed at AU (from April 2012 to mid-July 2015, and then from May 2017 to the present), i.e., under both the current and earlier versions of the Code, AU has never declined to investigate a complaint or report (whether oral or written) of* sexual assault on the ground that such complaint or report was untimely. Curran Aff. ¶ 6.

Mr. Doe has no basis to admit or deny this assertion and, therefore, denies it. Mr. Doe incorporates by reference his Objections to the Affidavit of Regina Curran, filed herewith.

*16. Prior to 2018, AU investigated complaints of sexual misconduct that were alleged to have occurred more than one year prior to the incident having been reported to the Title IX Program Office. Curran Aff. ¶ 7.*

Mr. Doe has no basis to admit or deny this assertion and, therefore, denies it. Mr. Doe incorporates by reference his Objections to the Affidavit of Regina Curran, filed herewith.

*17. During all times that AU's Title IX Program Officer has been employed at AU, AU has applied the procedures in the University Student Code of Conduct and AU's Discrimination and Sexual Harassment Policy in effect at the time the complaint or report was received to proceedings involving allegations of sexual misconduct. Curran Aff. ¶ 8.*

Mr. Doe has no basis to admit or deny this assertion and, therefore, denies it. Mr. Doe incorporates by reference his Objections to the Affidavit of Regina Curran, filed herewith.

*18. According to AU's Title IX Program Officer, had the University believed that a one-year limitation provision applied to Roe's report in this case against Doe, AU would have given Roe the opportunity to seek an extension of time to bring a complaint, and would*

*have granted such an extension given the serious nature of the conduct alleged and the circumstances. Curran Aff. ¶ 9.*

Mr. Doe has no basis to admit or deny this assertion and, therefore, denies it. Mr. Doe incorporates by reference his Objections to the Affidavit of Regina Curran, filed herewith.