**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JOHN DOE,<br><br>Plaintiff,<br>v.<br><br>AMERICAN UNIVERSITY,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:19-cv-03097-APM<br><br>**RESPONSE TO NOTICE OF SUPPLEMENTAL AUTHORITY** |

**RESPONSE TO DOE'S**
**NOTICE OF SUPPLEMENTAL AUTHORITY**

American University ("AU") respectfully submits this response to John Doe's Notice of Supplemental Authority ("Notice"), bringing to the Court's attention a recent Third Circuit decision, *Doe v. University of the Sciences*, -- F.3d --, 2020 WL 2786840 (3d Cir. May 29, 2020), reversing the dismissal of Title IX and breach of contract claims. While Doe suggests that the allegations in this case are similar to those pled in *University of the Sciences,* there are critical differences between the facts alleged in the two cases that render the conclusions reached by the Third Circuit regarding the Title IX claim in *University of the Sciences* inapposite here. Further, the Third Circuit's holding that the plaintiff in *University of the Sciences* had adequately pled a plausible breach of contract claim was based wholly on Pennsylvania law, which differs in material respects from D.C. law, as well as on different alleged facts. Accordingly, the Third Circuit's recent decision not only lacks any precedential authority for the case pending before this Court, it is wholly unpersuasive given the application of different state law, and the material differences in the alleged facts relied on by the Third Circuit and those presented in this case.

In his Notice, Doe correctly notes that the Third Circuit stated that "allegations about pressure from [the Department of Education ("DoE")] and the 2011 Dear Colleague Letter cannot alone support a plausible claim of Title IX sex discrimination." Doc. 25 at 2 (quoting

2020 WL 2786840 at *5). Rather, in finding that the plaintiff had alleged a plausible claim of sex discrimination, the Third Circuit pointed to allegations in that Complaint that the University had made *specific changes* to its Title IX process disfavoring males after the 2011 DoE guidance, 2020 WL 2786840 at *4, coupled with *two sets of specific allegations* suggesting that the plaintiff's gender was a motivating factor in the decision to investigate and discipline him. First, the plaintiff alleged that the University proceeded against him while ignoring evidence that the two female complainants and a female witness had collaborated in violation of the confidentiality mandate of the University's Sexual Misconduct Policy. *Id*. at *6. Second, the plaintiff alleged that the University investigated him, but not one of the female complainants, even though it was aware that both were "comparably intoxicated [which] undermined [plaintiff's] ability to give affirmative consent just as it impaired [the complainant's]." *Id*. at *5 & n.4. Collectively, the Third Circuit found these allegations sufficient to sustain the plaintiff's claims at the motion to dismiss stage.

Contrary to Doe's suggestion (Doc. 25 at n.1), there is no similar combination of allegations here. Rather, as Doe's own characterization of his allegations indicates, Doe primarily takes issue with the outcome of the investigation. *See id.* (citing allegations that AU reached "illogical conclusions" and "fail[ed] to reconcile Roe's allegations with [witness] testimony"). In other words, Doe thinks AU got it wrong. But nothing in *University of the Sciences* suggests that such allegations state a viable Title IX claim. And in fact, Doe's own allegations *refute* his claim that he was disciplined as a result of gender bias. As discussed in AU's Motion, Doc. 13 at 12-13, Doe admitted in the Complaint that he did not obtain explicit consent for the sexual touching for which he was held responsible, and he was held responsible based on *his own testimony* to that effect—not that of Roe. In *University of the Sciences*, the

University had to make a credibility determination as between the plaintiff and his accusers. 2020 WL 2786840 at *3. In short, the allegations in that case were fundamentally different, and the Third Circuit's holding regarding the Title IX claim has no application here.

The Third Circuit's decision in *University of the Sciences* has even *less* relevance to the contract claims before this Court—not only because, in that case, those claims were analyzed under Pennsylvania state law, but also because the University of the Sciences agreed that its student Handbook and Sexual Harassment Policy were contractual (*see* Slip Op. at 13). AU made no such concession here, but rather pointed to DC law finding that student handbooks were not "contractual" as between a University and its students,[1] in addition to the numerous express reservations of AU's discretion in the University Code and Policy relied on by Doe. For example, as pointed out in AU's briefs, the Code specifically reserved to AU the right "to review, and to take any action it deems necessary, in any conduct case." 2015-16 Code at 2. Under D.C. case law, that provision must be read in tandem with the parts of the 2015-16 Code on which Doe relies to argue that AU was contractually obligated to refuse to investigate him for sexually assaulting Roe. *See Pride v. Howard University*, 384 A.2d 31, 35-36 (D.C. 1978) (noting, where the parties had agreed that a Code of Conduct was contractual, that the court was nonetheless "required . . . in construing the . . . Code, to view it 'as a whole[,]'" keeping in mind

[1] *See* Mot. to Dismiss, Doc. 13 at 21-24 (citing *Richter v. Catholic Univ. of Am.*, 2019 WL 481643, at *3 (D.D.C. Feb. 7, 2019) (Academic Rules were not contractual, but rather "intended as a means for [University] to communicate its expectations regarding academic conduct"); *Shinabargar v. Bd. of Trs. of Univ. of D.C.*, 164 F. Supp. 3d 1, 29 (D.D.C. 2016) (honor code lacked evidence of intent to be bound, rendering it not enforceable); *Mosby-Nickens v. Howard Univ.*, 864 F. Supp. 2d 93, 99 (D.D.C. 2012) (dismissing contract claim based on graduate school Rules and Regulations for same reason).

that "it is not a detailed document purporting to anticipate and prescribe for every eventuality" and "the readings of the market place are not invariably apt in this non-commercial context").[2]

Further, even if AU's Code were construed to *contractually* obligate the University to provide a fair hearing as Doe suggests, *see* Doc. 25 at 3, unlike the Pennsylvania case law on which the Third Circuit relied, 2020 WL 2786840 at *7, D.C. law does not require that a University disciplinary hearing include live testimony and cross-examination to be "fair." Rather, in the one case in which a court in this district viewed a university's rules governing disciplinary proceedings as "contractual," it noted that the "the question is whether [the University's] procedures were carried out fairly and in good faith." *Doe v. George Wash. Univ.* ("*GWU I*"), 366 F. Supp. 3d 1, 13-14 (D.D.C. 2018). In other words, the court looked at whether the University had complied with *its own rules*. Doe has pointed to no D.C. case law holding that particular hearing procedures are required to ensure fairness in student disciplinary proceedings.

Finally, Doe points to language from *University of the Sciences* as suggesting that the Court should not defer—at all—to the University's disciplinary decision because it concerns sexual assault, not academic issues. Doc. 25 at 4. But the quoted language does not support that extreme proposition, *see id*., and there is ample case law to the contrary from the Supreme Court and other Circuits. *See* Mot. to Dismiss. at 11 & 28 (quoting *Davis ex rel. Lashonda D. v. Monroe Cty Bd. Of Educ.*, 526 U.S. 629, 648 (1999) ("courts should refrain from second-guessing the disciplinary decisions made by school administrators"), and citing cases from the Fourth and other Circuits reviewing university disciplinary decisions deferentially). To the extent that the Third Circuit now takes a different approach, this Court should not follow.

---

[2] Again, Pennsylvania law simply differs in this regard. *See* Slip Op. at 14 (relying on Pennsylvania cases stating that each provision of a contract, including between Universities and their students, independently must be given full force).

Respectfully submitted,

*<u>/s/ Laurel Pyke Malson</u>*

Laurel Pyke Malson (#317776)
Amanda Shafer Berman (#497860)
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: (202) 624-2576
LMalson@crowell.com
ABerman@crowell.com

*Counsel for Defendant*